**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-1391-GPG-KAS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

STATE OF COLORADO,
JARED POLIS, Governor of Colorado, in his Official Capacity,
COLORADO GENERAL ASSEMBLY,
PHILIP WEISER, Attorney General of Colorado, in his Official Capacity,
CITY AND COUNTY OF DENVER,
DENVER CITY COUNCIL,
MIKE JOHNSTON, Mayor for the City and County of Denver, in his official capacity,
DENVER SHERIFF DEPARTMENT,
ELIAS DIGGINS, Sheriff of Denver, Colorado, in his official capacity,

      Defendants.

---

**MOTION TO DISMISS BY STATE OF COLORADO, GOVERNOR JARED POLIS, AND ATTORNEY GENERAL PHILIP WEISER**

---

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

BACKGROUND ...............................................................................................2

LEGAL STANDARDS........................................................................................4

ARGUMENT ....................................................................................................5

I.    Federal Law Does Not Preempt the Challenged Anticommandeering Laws
      (Count I). ...............................................................................................5

      A.    There Is No Express Preemption. ...........................................................6

            1.    There is no conflict between federal and state law........................6

                  a.    Colorado's state and local employee provision mandates
                        compliance with federal law...............................................7

                  b.    Colorado's probation provision does not apply to
                        information regarding immigration and citizenship status....8

            2.    The United States' overbroad reading of §§ 1373 and
                  1644 is untenable..........................................................10

            3.    Even if there were a conflict, accepting the United States'
                  preemption argument would violate the Tenth Amendment. ........12

            4.    Sections 1373 and 1644 are not valid preemption
                  provisions. ....................................................................14

      B.    There Is No Obstacle Preemption..........................................................15

            1.    Federal law does not compel Colorado to provide the
                  assistance Plaintiff seeks. ...........................................16

            2.    The United States' position would violate the
                  anticommandeering principle. ....................................20

            3.    Federal laws regulating only federal officials are not
                  valid preemption provisions..........................................21

II.   The Challenged Anticommandeering Laws Do Not Discriminate Against the
      United States (Count II). .....................................................22

III.  The Challenged Anticommandeering Laws Do Not Regulate the United
      States (Count III). .............................................................24

CONCLUSION .................................................................................25

## INTRODUCTION

This lawsuit is premised on a false story—no terrorist organization, foreign or domestic, "seiz[ed] control" of part of Aurora, let alone as a "direct byproduct" of any "sanctuary policies." ECF No. 31 ("Am. Compl.") ¶ 1. This is a court of law, not a political rally. Colorado follows the law and does not obstruct the federal government's lawful actions. The General Assembly has lawfully directed that Colorado's limited law enforcement resources be focused on enforcing criminal laws and protecting Coloradans—directing Colorado law enforcement officers to do their job, not the federal government's job of immigration enforcement. *See, e.g.*, C.R.S. §§ 24-74-101, 24-76.6-102. The Tenth Amendment protects Colorado's sovereign right to direct the use of its resources and prevents the federal government from commandeering those resources.

All three claims in the Amended Complaint are flawed because they are based on stretching various federal and state laws. For example, while Congress authorized that the federal government "may" enter into agreements to use state and local resources, 8 U.S.C. § 1357(g), that does not require Colorado to agree. Likewise, though Congress addressed sharing information regarding "citizenship or immigration status," *id.* §§ 1373, 1644, that does not cover all sorts of other information. Once the distortions are removed, the claims fall apart. First, Colorado's laws are not preempted because they do not conflict with federal law. Indeed, several of the challenged laws expressly require following all federal and state laws. *See, e.g.*, C.R.S. § 24-74-103(1) ("except as required by federal or state law"). But to the extent there is any conflict, the Constitution prohibits commandeering Colorado's resources. Second, the challenged

laws do not unlawfully discriminate against the federal government. Third, the challenged laws regulate Colorado's agencies and employees, not the federal government. Accordingly, the Amended Complaint should be dismissed with prejudice.[1]

## BACKGROUND

The United States challenges several interrelated statutes that the General Assembly passed governing the use of Colorado's limited state and local government resources (collectively the "Anticommandeering Laws"). Exercising Colorado's Tenth Amendment right, the General Assembly determined that to "promote public safety," Colorado's resources should be directed to enforcing criminal laws and protecting Coloradans, not to performing the federal government's duties. *See, e.g.*, HB 19-1124, §§ 1(a)–(b), 2 (declaring the "federal government does not have the authority to command state or local officials to enforce or administer a federal regulatory program" or to "perform the duties of the federal government"). For that reason, all the Anticommandeering Laws direct state and local agencies, officials, and resources. *See, e.g.*, C.R.S. §§ 24-74-103–104; *id.* § 24-76.7-102–103. None direct federal agencies or officials. Nor are they intended to obstruct federal officials; indeed, numerous statutes contain express carveouts for compliance with federal law. *See, e.g.*, *id.* § 24-74-103.

Underlying the General Assembly's resource decision was the concern that using Colorado's public safety agencies to "play a role in enforcing federal civil immigration laws can undermine public trust." HB 19-1124 § 1(c). Such a loss of public trust can harm public safety and welfare by "deter[ring] persons from accessing . . . services

---

[1] The parties conferred on August 20-21, 2025 regarding the grounds for this motion.

offered by state agencies," C.R.S. § 24-74-101(1)(e); preventing "crime victims . . . who

seek justice and due process of law" from engaging with law enforcement or the courts,

HB 19-1124, § 1(f); or deterring individuals from complying with probation requirements.

The General Assembly emphasized that the laws are "not intended to interfere with

criminal investigations," C.R.S. § 24-74-101(1)(h), that they do not preclude the

enforcement of any criminal law, and that they protect local law enforcement's ability to

"participat[e] in coordinated law enforcement actions with federal law enforcement

agencies" to enforce all criminal law. *Id.* §§ 24-76.6-102(5).

The Amended Complaint challenges four enacted bills—House Bill 19-1124,

Senate Bill 21-131, Senate Bill 23-1110, and Senate Bill 25-276.[2] These statutes:

- Limit use of Colorado resources for immigration detention: Colorado governmental
  entities are prohibited from entering into immigration detention agreements,
  C.R.S. § 24-76.7-103, including through private entities, *id.* § 24-76.7-102.
  Colorado law enforcement officers are prohibited from arresting or detaining
  individuals based on a civil immigration detainer. *Id.* § 24-76.6-102(2).

- Limit disclosure of certain confidential personal information by state and local
  employees, except as required by law: State and local subdivision employees are
  prohibited from disclosing a range of "personal identifying information" for the
  purpose of assisting in immigration enforcement, except as required by state or
  federal law. C.R.S. § 24-74-103. Colorado probation and pretrial services
  employees are prohibited from sharing a specific narrower set of confidential
  identifying information with federal immigration authorities. *Id.* § 24-76.6-103(1).

- Require a certification for access to personal information in state and local
  subdivision databases: Any third party granted access to personal identifying
  information in a state and local subdivision database must certify that it will not

---

[2] Plaintiff purports to challenge every word of these four bills and seeks to enjoin them
in full. It is Plaintiff's burden therefore to show that all parts of these laws are facially
unconstitutional. *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320,
329 (2006) (explaining the "normal rule" that a court should "enjoin only the
unconstitutional applications of a statute while leaving other applications in force" or
"sever its problematic portions while leaving the remainder intact" (citations omitted)).

use or disclose the information for the purpose of assisting in immigration
enforcement, unless required by state or federal law. C.R.S. § 24-74-105(1)(a).

- <u>Reduce collection of personal information by state agencies and local
  subdivisions unless required by law or necessary to perform duties</u>: State and
  local subdivision employees are prohibited from requesting certain personal
  information, except as required by state or federal law, as necessary to perform
  their duties, or to verify eligibility for certain federal benefits. C.R.S. § 24-74-104.

- <u>Provide basic information about rights to incarcerated individuals</u>: Colorado law
  enforcement must provide incarcerated individuals with basic information about
  their rights prior to interviews with federal immigration authorities. C.R.S. § 24-
  76.6-103(2). This provision expressly does not prevent coordinating interviews
  between federal immigration officers and incarcerated individuals. *Id.*

The Amended Complaint contains three counts. Count I alleges that the

Anticommandeering Laws are preempted by federal law. Am. Compl. ¶¶ 87, 89–92.

Counts II and III allege, respectively, that the challenged Anticommandeering Laws

unlawfully discriminate against the federal government and regulate the federal

government. *Id.* ¶¶ 93–100. Plaintiff seeks declaratory relief and an injunction

prohibiting enforcement of the Anticommandeering Laws. *Id.* at pp. 27–28.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint that

fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

omitted). In conducting this analysis, a court disregards labels, conclusory allegations,

naked assertions, or formulaic recitations of the elements. *Brooks v. Mentor Worldwide

LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

**ARGUMENT**

**I.    Federal Law Does Not Preempt the Challenged Anticommandeering Laws (Count I).**

Colorado's laws are neither expressly nor impliedly preempted by federal immigration law. Express preemption occurs when Congress "withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision." *Arizona v. United States*, 567 U.S. 387, 399 (2012). Conflict preemption, a form of implied preemption, occurs where "compliance with both federal and state regulations is a physical impossibility" or "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id* (cleaned up). All forms of preemption "work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence." *Murphy v. NCAA*, 584 U.S. 453, 477 (2018). The Supremacy Clause supplies "a rule of decision," but it is "not an independent grant of legislative power to Congress." *Id.* As such, for a federal statute to preempt state law, it "must be best read as one that regulates private actors," because Congress has "the power to regulate individuals, not States." *Id.* (cleaned up).

"Statutes are entitled to the presumption of non-preemption." *NLRB v. Pueblo of San Juan*, 276 F.3d 1186, 1195 (10th Cir. 2002). "The party claiming preemption bears the burden of showing with specificity that Congress intended to preempt state law." *Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 489 n.4 (10th Cir. 1998); *see also Day v. SkyWest Airlines*, 45 F.4th 1181, 1184 (10th Cir. 2022). That party likewise

"bear[s] the burden of showing that federal and state law conflict." *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1143 (10th Cir. 2010). "In preemption analysis, courts should assume that the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress." *Arizona*, 567 U.S. at 400 (cleaned up).

### A.    There Is No Express Preemption.

The United States' claim that Colorado's information-sharing restrictions are expressly preempted fails for three reasons. First, there is no conflict between state and federal law. Colorado's information-sharing laws permit the exchange of information required by 8 U.S.C. §§ 1373 and 1644, the statutes on which the United States relies as express preemption provisions. The United States' argument to the contrary rests on a misinterpretation of Colorado's statutes and an untenable construction of the federal ones. Second, there is no express preemption because the United States' interpretation of §§ 1373 and 1644 would violate anticommandeering principles. Third, because §§ 1373 and 1644 purport to regulate the states directly, rather than to regulate private actors, they are not valid preemption provisions and cannot preempt Colorado's laws.

### 1.    There is no conflict between federal and state law.

Colorado's information-sharing laws are not expressly preempted because none of them "falls within the scope of [the] federal preemption provision[s]" identified by the United States, §§ 1373 and 1644. *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 765 (10th Cir. 2010). Sections 1373 and 1644 provide that states and local governments may not "prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service

information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a); *see also id*. § 1644.[3] Because none of Colorado's laws conflict with the requirements of §§ 1373 and 1644, they are not expressly preempted.

### a. Colorado's state and local employee provision mandates compliance with federal law.

The first of Colorado's information-sharing provisions, § 24-74-103 (the "state and local employee provision"), restricts state and local employees from disclosing for immigration enforcement purposes "personal identifying information," which is defined by statute to include a broad array of personal data and identifying information, including "immigration or citizenship status." C.R.S. § 24-74-102(1). However, the statutory prohibition contains an express carve-out for compliance with federal law: it allows such information to be disclosed "as required by federal or state law." *Id*. § 24-74-103(1). Because the state and local employee provision allows state and local employees to exchange information to the extent so required by §§ 1373 and 1644, it is not preempted by those provisions.[4] *See, e.g.*, *United States v. California*, 921 F.3d 865, 885 (9th Cir. 2019); *Grewal*, 475 F. Supp. 3d at 376.

---

[3] Though § 1644 is written in the passive voice and thus has minor wording differences from § 1373, courts routinely analyze them together, and the United States has previously agreed that the two provisions should be treated identically for purposes of constitutional analysis. *See, e.g.*, *County of Ocean v. Grewal*, 475 F. Supp. 3d 355, 371 n.13 (D. N.J. 2020); *City of Chicago v. Barr*, 405 F. Supp. 3d 748, 762–63 (N.D. Ill. 2019); *see also* Compl. ¶ 32 (treating §§ 1373 and 1644 identically).

[4] The same is true of § 24-74-104, regarding collection of information, and § 24-74-105, regarding third-party certifications. Each provision includes express carveouts for compliance with federal law. *Id.* §§ 24-74-104(1); 24-74-105(1)(b).

        **b.**    **Colorado's probation provision does not apply to
information regarding immigration and citizenship
status.**

Colorado's second challenged restriction on information sharing, § 24-76.6-103

(the "probation provision"), applies to a narrower category of state and local employees

and covers a narrower range of information. Critically here, it does not apply to

information regarding citizenship or immigration status, and thus it does not implicate

§§ 1373 and 1644. Since it does not fall within the scope of those provisions, there is no

express preemption. *Edmondson*, 594 F.3d at 765.

Section 24-76.6-103 restricts probation and pretrial service employees from

sharing "personal information about an individual" with federal immigration authorities.

C.R.S. § 24-76.6-103(1)(a). "Personal information" is defined to mean "any confidential

identifying information about an individual, including but not limited to home or work

contact information; family or emergency contact information; probation meeting date

and time; community corrections locations; community corrections meeting date and

time; or the meeting date and time for criminal court-ordered classes, treatment, and

appointments." *Id.* § 24-76.6-101(4). "Immigration or citizenship status" is absent from

the list. While the types of information listed are non-exclusive, they all relate to means

of locating a person; none relates to identifying characteristics about an individual such

as race, gender, nationality, or citizenship status. Thus, under the cannon of "noscitur a

sociis," the probation provision is most naturally read as applying only to the exchange

of location-related information. *Cf. Yates v. United States*, 574 U.S. 528, 544 (2015)

(applying this canon to conclude that the term "tangible object" in a list of terms

beginning with "any record [or] document" was "appropriately read to refer, not to any tangible object, but specifically to the subset of tangible objects involving records and documents"); *Coloradans for a Better Future v. Campaign Integrity Watchdog*, 2018 CO 6, ¶ 37 ("[B]ecause the General Assembly deposited the word 'gift' among monetary terms, we infer that it meant monetary gift."); *see also Edmonson*, 594 F.3d at 765 (in determining whether a statute is preempted, courts apply "ordinary principles of statutory interpretation"). Because "immigration and citizenship status" is not a form of locating information, the disclosure of such information is not covered by the provision.

This reading is also supported by the contrasting terms and definitions used in the state and local employee provision. There, the General Assembly chose to regulate state and local employees' sharing of "personal identifying information" and defined that term broadly to mean "information that may be used, along or in conjunction with any other information, to identify a specific individual." C.R.S. § 24-74-102(1). The statutory definition contains a lengthy list of examples, which includes identifying data like date of birth, social security number, and vehicle registration information; demographic information like race, ethnicity, gender identity, or religion; locating information such as home or work address; and records of physical features or handwriting. This stands in marked contrast to the probation provision, where the General Assembly expressly chose a far narrower term and omitted any express reference to immigration or citizenship status.

Finally, to the extent any ambiguity remains as to the scope of information covered by the probation and pretrial services provision, the doctrine of constitutional

avoidance counsels adopting a more limited reading, because it avoids the Supremacy
Clause concerns raised by the United States. *See United States v. Hansen*, 599 U.S.
762, 781 (2023) (applying constitutional avoidance doctrine to adopt statutory reading
that was "at least fairly possible" (quotation marks omitted)). Properly construed, the
probation provision does not encompass the forms of information covered by §§ 1373
and 1644 and thus cannot be expressly preempted by them.

> **2.    The United States' overbroad reading of §§ 1373 and 1644 is untenable.**

In an effort to manufacture conflict between Colorado's law and the federal ones,
the United States claims that §§ 1373 and 1644 should be read expansively, rather than
as limited to information about citizenship and immigration status. It contends that
"information 'regarding the citizenship or immigration status, lawful or unlawful, of any
individual'" in fact "broadly encompasses, among other things, 'the presence,
whereabouts, or activities' of aliens." Am. Compl. ¶ 5. This reading is entirely
unsupported by the statutes' plain language, and courts have repeatedly rejected it and
similarly overbroad readings. *United States v. Illinois*, No. 25-cv-01285, 2025 WL
2098688, at *10 (N.D. Ill. July 25, 2025) ("Without exception, each [other court that has
considered the issue] has rejected the United States's capacious reading of § 1373.");
*Steinle v. City and Cnty. of San Francisco*, 919 F.3d 1154, 1163–64 (9th Cir. 2019)
(§ 1373 does not encompass release date information); *Grewal*, 475 F. Supp. 3d at
373–76; *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 332–33 (E.D. Pa. 2018)
("*Philadelphia*") (when a person will be released from detention is not "'information

regarding' . . . immigration status"), *vacated in part on other grounds by City of Philadelphia v. Attorney General of United States*, 916 F.3d 276 (3d Cir. 2019).

The plain meaning of "information regarding . . . citizenship or immigration status" relates to whether a person is a citizen and the nature of their immigration status. *See California*, 921 F.3d at 891 ("[T]he phrase 'information regarding the citizenship or immigration status, lawful or unlawful, of any individual' is naturally understood as a reference to a person's legal classification under federal law . . . ."); *Grewal*, 475 F. Supp. 3d at 375. Even if the phrase "information regarding" can be read to encompass some category of information beyond the mere fact of a person's citizenship or immigration status, a reading that includes the "whereabouts[] or activities of aliens," Am. Compl. ¶ 5, is completely untethered from the statutory text. No reasonable person would read "information regarding . . . citizenship or immigration status" to cover, for example, a person's "emergency contact information" or "the meeting date and time for criminal court-ordered classes." C.R.S. § 24-76.6-101(4). Moreover, as the Ninth Circuit recognized, "Congress has used more expansive phrases in other provisions of Title 8 when intending to reach broader swaths of information." *California*, 921 F.3d at 892 (citing, *e.g.*, 8 U.S.C. § 1360).

The United States rests its alternate interpretation on language in a House Report. *See* Am. Compl. ¶ 5. But because its wildly broad interpretation is foreclosed by the statute's plain language, there is no basis for consulting the legislative history. *See, e.g.*, *Steinle*, 919 F.3d at 1164 & n.11; *Grewal*, 475 F. Supp. 3d at 376 n.19; *Illinois*, 2025 WL 2098688, at *13. And while the House Report states that the conferees

"intend[ed]" to give state and local officials the power to communicate with federal officials about "the presence, whereabouts, or activities of illegal aliens," that simply is not the statute that Congress passed.[5] *See Chamber of Commerce v. Whiting*, 563 U.S. 582, 599 (2011) (rejecting express preemption claim because *"*Congress's 'authoritative statement is the statutory text, not the legislative history'" (citations mitted)); *United States v. Herrera*, 51 F.4th 1226, 1287 (10th Cir. 2022) ("[W]hen the statutory text is unambiguous, we need not rely on legislative history.").

Applying the proper construction of both Colorado and federal law, there is no express preemption.

### 3.    Even if there were a conflict, accepting the United States' preemption argument would violate the Tenth Amendment.

Even if Colorado's laws on providing personal information fell within the scope of §§ 1373 and 1644, the United States' preemption claim should be rejected, because it would amount to unconstitutional commandeering. Under the anticommandeering doctrine, "[t]he Federal Government may not command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Murphy*, 584 U.S. at 473 (quotations omitted). This rule, grounded in the Tenth Amendment, "applies regardless of whether the federal statute commands state action or precludes it." *Colorado v. U.S. Dep't of Justice*, 455 F. Supp. 3d 1034, 1058 (D. Colo.

---

[5] The same House Report also contradicts the United States' position that §§ 1373 and 1644 "require" state employees to share information with federal immigration authorities. *See, e.g.*, H.R. Rep. No. 104-725 at 383 (1996) (Conf. Rep.) ("[The law] does not require, in and of itself, any government agency or law official to communicate with the INS.")

2020). The doctrine preserves the balance of power between the federal government and the states; promotes political accountability by clarifying whether state or federal actors are responsible for regulatory programs; and prevents the federal government from shifting the costs of regulation to the States. *Murphy*, 584 U.S. at 473–74.

Under the United States' position, §§ 1373 and 1644 would remove from Colorado the choice of whether to expend state and local employees' resources on assisting federal immigration authorities with immigration enforcement. *E.g.*, Am. Compl. ¶ 74. As numerous courts have recognized, the anticommandeering doctrine forbids that result.[6] Permitting federal law to dictate how states maintain their data and how state employees spend their time would "undermine political accountability by blurring the line between state and federal policy initiatives and priorities." *Colorado*, 455 F. Supp. 3d at 1059. "And, of particular concern to Colorado," it would "shift the cost of compliance to state and local governments with limited resources, requiring them to 'stand aside and allow the federal government to conscript the time and cooperation of local employees.'" *Id* (citation omitted). The Tenth Amendment leaves to Colorado the

---

[6] *See, e.g.*, *Illinois*, 2025 WL 2098688, at *23–25; *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 866–73 (N.D. Ill. 2018) ("*City of Chicago*"), *aff'd on other grounds*, 961 F.3d 882, 898 (7th Cir. 2020); *Grewal*, 475 F. Supp. 3d at 376–79, *aff'd on other grounds*, 8 F.4th 176, 182 n.4 (3d Cir. 2021); *Oregon v. Trump*, 406 F. Supp. 3d 940, 971–73 (D. Or. 2019), *aff'd in part and vacated as moot in part sub nom. City & County of San Francisco v. Garland*, 42 F.4th 1078, 1087–88 (9th Cir. 2022); *City & County of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 949–53 (N.D. Cal. 2018), *aff'd in part, vacated in part on other grounds*, 965 F.3d 753, 761 (9th Cir. 2020); *Philadelphia*, 309 F. Supp. 3d at 325–31; *see Colorado*, 455 F. Supp. 3d at 1057–60 (questioning constitutionality of § 1373); *United States v. California*, 314 F. Supp. 3d 1077, 1101 (E.D. Cal. 2018), *aff'd in part, rev'd in part on other grounds*, 921 F.3d 865, 893 n.19 (9th Cir. 2019) (same).

decision of how its law enforcement employees should spend their time, as well as what data the state should invest time and resources in maintaining. *See City of Chicago*, 321 F. Supp. 3d at 869–70;[7] *City & Cnty. of San Francisco*, 349 F. Supp. 3d at 951–52; *see also City of El Cenizo v. Texas*, 890 F.3d 164, 180–81 (5th Cir. 2018) (noting the Tenth Amendment would "likely" prevent enforcement of § 1373). Because the United States' preemption argument would require otherwise, it must be rejected.

### 4.    Sections 1373 and 1644 are not valid preemption provisions.

The United States' express preemption claims fail for an independent reason: §§ 1373 and 1644 cannot validly preempt Colorado's laws because they do not regulate private parties. Congress has "the power to regulate individuals, not States." *Murphy*, 584 U.S. at 477 (quotation marks omitted). As a result, for a federal statute to preempt state law, it "must be best read as one that regulates private actors." *Id.* Sections 1373 and 1644 fail that test, as they both "unequivocally dictate[] what a state legislature may and may not do." *Id.* at 474. They purport to directly regulate the kinds of laws states may enact and the policies they may pursue. *See* 8 U.S.C. § 1373(a) ("a Federal, State, or local government entity or official may not prohibit, or in any way restrict"). And the subject of both laws' regulation is unquestionably state and local governments. *See id.* § 1373(b) (barring restrictions on state or local government entities); *id.* § 1644 (same); *see also Illinois*, 2025 WL 2098688, at *16 ("Section 1373 regulates States and only

---

[7] Though the Northern District of Illinois later withdrew its declaratory judgment as to Section 1373's facial unconstitutionality after the Seventh Circuit affirmed on other grounds, *see City of Chicago*, 513 F. Supp. 3d 828, nothing in the Seventh Circuit's affirmance cast doubt on the district court's Tenth Amendment analysis, which it described as "compelling." *City of Chicago*, 961 F.3d at 898.

States (and their political subdivisions), so it cannot be preemptive."); *see also Oregon*, 406 F. Supp. 3d at 972 ("[T]here is simply no way to understand the provisions as anything other than direct commands to the States." (cleaned up)). As a result—and again, as courts have repeatedly found—neither provision can validly preempt state law. *See Ocean Cnty. Bd. of Comm'rs v. Attorney General*, 8 F.4th 176, 181–82 (3d Cir. 2021); *Illinois*, 2025 WL 2098688, at *16; *Philadelphia*, 309 F. Supp. 3d at 329; *City & Cnty. of San Francisco*, 349 F. Supp. 3d at 950.

### B.    There Is No Obstacle Preemption.

Lacking any expressly conflicting statute, the United States alleges the Anticommandeering Laws are preempted as an "obstacle" to achieving Congress's immigration objectives. Am. Compl. ¶ 91. But the Supreme Court has repeatedly emphasized that preemption is not a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Whiting*, 563 U.S. at 607 (quotations omitted). "[S]uch an endeavor 'would undercut the principle that it is Congress rather than the courts that pre-empts state law.'" *Id.* As a result, "a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." *Id* (quotations omitted). At bottom, the United States' arguments do exactly what the Supreme Court has forbade: they seek to rewrite the laws Congress enacted to create a conflict that does not exist.

The obstacle preemption claims fail multiple times over: they identify no true conflict between federal and state law; they run afoul of the anticommandeering

doctrine; and they again rely on federal laws that cannot serve as valid preemption provisions. The United States' obstacle preemption claims thus fail to state a claim.

### 1. Federal law does not compel Colorado to provide the assistance Plaintiff seeks.

There is no conflict between Colorado's laws and the cited federal statutes. The federal laws impose obligations or confer authority on federal officials regarding immigration enforcement, but they impose no corresponding obligations on states. Similarly, the Colorado laws do not purport to regulate federal immigration activities; they instead direct state and local officials to focus their resources on their state law duties, rather than federal immigration enforcement. The United States' contrary arguments stretch the federal laws beyond recognition.

*First*, there is no conflict between federal law directing immigration officers to "inspect" persons seeking admission to the United States, 8 U.S.C. § 1225(a)(3), and the state law requiring Colorado law enforcement to advise incarcerated individuals of their rights in writing before coordinating interviews with federal immigration authorities, C.R.S. § 24-76.6-103(2). The federal statute requires federal immigration officers to inspect "aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States." 8 U.S.C. § 1225(a)(3). It says nothing about accessing individuals detained in state or local facilities and nothing about whether individuals may be advised of their rights. *Id.* At the same time, the state law does not prevent federal immigration officers from "inspecting" anyone; it instead imposes a narrow obligation on state law enforcement to provide incarcerated individuals with a piece of paper containing a basic list of rights in connection with an

interview. C.R.S. § 24-76.6-103(2). Even if immigration authorities would prefer to interview people who do not know their rights, the "Supremacy Clause gives priority to 'the Laws of the United States,' not the . . . law enforcement priorities or preferences of federal officers." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020).[8]

     *Second*, the Colorado provisions removing state and local governments from the immigration detention business do not obstruct the federal government's authority to detain people pending removal. Federal law authorizes the federal government to detain certain individuals for immigration purposes; it does not require states to do so. Thus, for example, 8 U.S.C. § 1357(g) authorizes that the federal government "may" enter into agreements to use state and local resources for detention purposes, 8 U.S.C. § 1357(g)(1), but it does not *require* states to agree, nor could it. *See id.* § 1357(g)(9) (providing that "[n]othing in this subsection shall be construed to require any State or political subdivision of a State to enter into an agreement"). The United States' preemption argument would rewrite federal laws to require that Colorado open its detention facilities for civil immigration detention.

     The United States complains that without access to state and local detention facilities, it may need to release individuals it would otherwise detain or "incur significant transport expenses" to detain them, presumably due to a dearth of federal detention

---

[8] The United States also cites 8 U.S.C. § 1357(a)(3) as preempting Colorado's law, Compl. ¶ 77, but that provision is irrelevant. It authorizes immigration authorities to "to board and search for aliens [on] any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border . . . ." *Id.* This has nothing to do whatsoever with accessing individuals in Colorado's jails and correctional facilities.

facilities. Am. Compl. ¶ 80. But nothing in Colorado's law prevents the federal government from detaining anyone or increasing its own detention capacity. Colorado merely exercises its sovereign authority to direct that limited state and local government resources be utilized for criminal justice purposes, not immigration detention.[9] This traditional exercise of the state's police powers is not preempted simply because the federal government would prefer to use state and local resources instead of expending its own. *See McHenry Cnty. v. Raoul*, 44 F.4th 581, 592 (7th Cir. 2022) ("Congress may have hoped or expected that States would cooperate with any requests from the Attorney General to house detainees in their facilities. But . . . States are not bound by that hope or expectation."); *Arizona*, 567 U.S. at 400 ("In preemption analysis, courts should assume that the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress." (cleaned up)); *Illinois*, 2025 WL 2098688, at *21 ("[B]ecause the INA merely offers States the opportunity to assist in civil immigration enforcement, [Illinois' analogous statutes] don't make ICE's job more *difficult*, they just don't make it *easier*.").

*Third*, Colorado's choice not to detain individuals based on civil immigration detainer requests does not impede the federal scheme, because detainers are just that—a request. 8 C.F.R. § 287.7(a) ("The detainer *is a request* that such agency advise the Department, prior to release of the alien . . . .") (emphasis added); *Galarza v. Szalczyk*, 745 F.3d 634, 641, 643 (3d Cir. 2014) (noting that "§ 1357(d) . . . does not

---

[9] Colorado itself faces highly limited detention capacity. It is within Colorado's sovereign authority to specify that this capacity be dedicated solely to criminal detention to avoid the risk of releasing criminals because of space taken by civil immigration detention.

authorize federal officials to command state or local officials to detain suspected aliens subject to removal" and "settled constitutional law clearly establishes that they must be deemed requests"); *see also* Am. Compl. ¶ 28 ("[a]n immigration 'detainer is a request'").[10] Federal law can hardly preempt a state law on the basis that it disallows activity the federal law never required in the first place. *Cf. City of El Cenizo*, 890 F.3d at 180–81 ("Congress did not choose to make these laws [regarding state cooperation] voluntary; it could not have made them mandatory.").

The United States also points to 8 U.S.C. §§ 1226(a) and 1231(a) as preempting Colorado's law on detainer requests, but they do not. Section 1226(a) allows the U.S. Attorney General to arrest and detain certain individuals based on an administrative warrant, and § 1231(a) imposes duties on the U.S. Attorney General with respect to the detention of individuals ordered removed from the United States. Neither provision obligates states to enforce civil detainer requests or administrative warrants. Nor does Colorado's law prevent federal officials from carrying out their respective duties under federal law. *See California*, 921 F.3d at 887 (federal law did not preempt state law barring local law enforcement from transferring individuals to immigration custody absent judicial warrant or judicial probable cause determination). It instead reflects the state's prerogative to dedicate its limited law enforcement and detention resources to

---

[10] While 8 C.F.R. § 287.7(d) provides that a local agency that detains an individual "shall maintain custody . . . for a period not to exceed 48 hours," that provision does not deprive the local agency of discretion whether to detain in the first place. Rather, it indicates that continued detention cannot exceed 48 hours. *See Galarza*, 745 F.3d at 640–41 (rejecting argument that detainer request imposes mandatory obligation); *see also* Am. Compl. ¶ 29 ("DHS also may request, but not require").

criminal law enforcement. *See, e.g.*, C.R.S. § 24-76.6-102(5).

*Fourth*, neither Colorado's information-sharing restrictions nor its immigration detainer policy are preempted by federal laws requiring that certain individuals be detained by immigration authorities. The United States suggests these provisions impermissibly obstruct federal detention efforts because they force immigration authorities to pursue their own investigations and carry out their own arrests. Am. Compl. ¶¶ 82–83. But again, federal law does not obligate states or localities to transfer detained persons to federal immigration authorities upon their release, and the United States' contrary suggestion misrepresents the federal scheme. *See California*, 921 F.3d at 887 ("There is nothing in the federal regulatory scheme requiring States to alert federal agents before releasing a state or local inmate." (cleaned up)). Nor do Colorado's laws "active[ly] frustrat[e] . . . the federal government's ability to discharge its operations." *California*, 921 F.3d at 885. "[R]efusing to help is not the same as impeding." *Id.* at 888. As discussed below, a contrary conclusion would violate the Tenth Amendment.

In sum, because there is no true conflict between federal and state law, the United States' obstacle preemption claims fail. The Court should reject the United States' attempts to rewrite the federal immigration laws that were actually enacted.

      **2.    The United States' position would violate the anticommandeering principle.**

Nearly all the United States' obstacle preemption claims boil down to the same contention: federal immigration authorities could do their jobs more easily if Colorado devoted resources to civil immigration enforcement. The Amended Complaint admits as

much. Am. Compl. ¶ 75 (claiming the Anticommandeering Laws "impede the Federal

Government's ability to regulate immigration and take enforcement actions against

illegal aliens by preventing state law enforcement officials from assisting with federal

civil immigration enforcement"). But as multiple U.S. Courts of Appeals have

recognized, this argument—like the United States' express preemption claim—runs

headlong into the anticommandeering rule. *California*, 921 F.3d at 888–89; *City of El

Cenizo*, 890 F.3d at 178; *Galarza*, 745 F.3d at 643–45; *see also Colorado*, 455 F. Supp.

3d at 1057–60. The implication of the United States' obstacle preemption claim is that

Congress may require Colorado to participate in immigration enforcement by enforcing

civil detainer requests, providing access to state facilities for immigration detention, and

making state employees and databases available to assist with federal authorities'

investigatory needs. But that would conscript state resources for implementing a federal

program, which the anticommandeering doctrine forbids. *See California*, 921 F.3d at

890; *Illinois*, 2025 WL 2098688, at *24.

> **3.**    **Federal laws regulating only federal officials are not valid
> preemption provisions.**

The United States' preemption claims also fail because most, if not all, of them

rely on federal laws that do not regulate private actors. *See Murphy*, 584 U.S. at 477.

Thus, like §§ 1373 and 1644, those statutes cannot serve as valid preemption

provisions. The United States points to federal laws that impose obligations or confer

authority on federal officials and asserts they preempt state laws that impose obligations

or prohibit activity by state and local officials. That is not preemption; that is the federal

and state governments operating in their respective spheres, as federalism envisions.

All the United States' preemption claims should be dismissed.

## II.    The Challenged Anticommandeering Laws Do Not Discriminate Against the United States (Count II).

The United States alternatively seeks to repackage its preemption arguments through two additional counts. Neither has merit. Count II should be dismissed because the Anticommandeering Laws do not discriminate against the federal government. Under the intergovernmental immunity doctrine, a state may not "discriminat[e] against the Federal Government or those with whom it deals." *United States v. Washington*, 596 U.S. 832, 838 (2022). But such discrimination only occurs if a state "treats someone else better than it treats" the federal government. *Washington v. United States*, 460 U.S. 536, 545–46 (1983). Here, Plaintiff cannot identify any way the Anticommandeering Laws treat the federal government less favorably.

The Amended Complaint appears to focus on Colorado Revised Statutes §§ 24.76.6-102–103, § 24-76.7-101, § 24-76.7-103, and § 24-74.1-102. Plaintiff contends these provisions "single out" the federal government but fails to identify how these provisions evidence any discrimination. Am. Compl. ¶¶ 86–87. Crucially, Plaintiff's claim fails because there are no actors similarly situated to the federal government whom the state treats better. *North Dakota v. United States*, 495 U.S. 423, 438 (1990). "Differential treatment is critical to a discrimination-based intergovernmental immunity claim," but Plaintiff cannot identify any such treatment. *McHenry Cnty.*, 44 F.4th at 594; *see also Illinois*, 2025 WL 2098688, at *25 (rejecting similar claim and noting that "[i]t is doubtful that a comparator exists, for the United States concedes that only the federal government enforces civil immigration law").

At bottom, Colorado has decided not to expend its limited resources enforcing immigration laws, regardless of the identity of the party seeking that assistance. As courts have held in rejecting Plaintiff's arguments, "[t]he mere fact that [the challenged law] touches on an exclusively federal sphere is not enough to establish discrimination." *McHenry Cnty.*, 44 F.4th at 594; *see also California,* 921 F.3d at 881 (intergovernmental immunity "is not implicated when a state merely references or even singles out federal activities in an otherwise innocuous enactment"). Plaintiff cannot demonstrate that it receives less favorable treatment than any similarly situated party.

Lacking any factual basis to demonstrate differential treatment, the Amended Complaint instead asserts Plaintiff's "belief" that Colorado "does not restrict agreements to detain persons with entities other than the federal government." Am. Compl. ¶ 53. But the inapposite Colorado statutes Plaintiff cites have nothing to do with immigration detention and fail to support any claim of differential treatment.[11] None of these statutes indicate that Colorado treats any similarly situated actor more favorably.

---

[11] Colorado Revised Statutes § 29-1-201 provides a legislative declaration for a statute implementing voter-approved constitutional amendments that limit Colorado governmental entities from providing certain aid to corporations and permit cooperation and contracts between governments. Colorado Revised Statutes § 29-1-203 provides governments the option to cooperate or contract with one another, and in fact undercuts Plaintiff's claims by specifying that "where other provisions of law"—such as the challenged statutes— "provide requirements for special types of intergovernmental contracting or cooperation, those special provisions shall control." *Id.* § 29-1-203(3). Finally, Colorado Revised Statutes § 24-60-501 codifies Colorado's participation in the Interstate Agreement on Detainers. But this compact, which creates a process to ensure speedy trial for already convicted and sentenced prisoners facing criminal charges in other states, is silent on the issue of states' role in enforcing civil immigration law or immigration detention agreements. *Id.* § 24-60-501 Art. I; 18 U.S.C. App. 2 § 2.

Finally, to the extent any provision could be considered discriminatory, Colorado's laws are permissible under the Tenth Amendment. As discussed previously, *supra* at Part I.A.3; Part I.B.2, the anticommandeering doctrine prohibits the federal government from compelling states "to administer or enforce a federal regulatory program." *Murphy*, 584 U.S. at 473. Finding that the challenged statutes violate the intergovernmental immunity doctrine "would imply that [a state] *cannot* choose to discriminate against federal immigration authorities by refusing to assist their enforcement efforts—a result that would be inconsistent with the Tenth Amendment and the anticommandeering rule." *California*, 921 F.3d at 891 (rejecting a discrimination claim against an analogous California law). Accepting Plaintiff's argument that Colorado's sovereign choice not to provide resources to enforce immigration laws constitutes discrimination would render states' Tenth Amendment rights toothless and allow state officers to "be dragooned into administering federal law." *Printz v. United States*, 521 U.S. 898, 928 (1997) (cleaned up).

In sum, the Anticommandeering Laws do not discriminate against the federal government. To the extent any law could be read to treat the federal government differently than similarly situated actors, it does so only to the extent of implementing Colorado's constitutionally protected decision not to use its resources for immigration enforcement. *California*, 921 F.3d at 891. As a result, Count II should be dismissed.

## III.    The Challenged Anticommandeering Laws Do Not Regulate the United States (Count III).

The Court should dismiss Count III because the Anticommandeering Laws do not "regulate the United States directly." *Washington*, 596 U.S. at 833. The Amended

Complaint devotes three conclusory sentences to this claim, without even specifying which statutes purportedly directly regulate the federal government, let alone how they amount to direct regulation. Am. Compl. ¶¶ 88, 99–100. In fact, these statutes only regulate the conduct of state and local employees.[12] *See McHenry Cnty.*, 44 F.4th at 593 (rejecting challenge to similar law that "directly regulates only State and local entities and law enforcement—not the federal government"); *Illinois*, 2025 WL 2098688, at *26. Such regulation reflects Colorado's choice, consistent with our constitutional system of dual sovereignty, to limit the use of state and local resources for the enforcement of a federal program. *Printz*, 521 U.S. at 935. The United States' arguments are again contrary to anticommandeering principles. *Illinois*, 2025 WL 2098688, at *27 (rejecting these arguments as an "end-run around the Tenth Amendment"). Because Colorado's laws do not regulate the federal government, Count III should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice.

---

[12] *CoreCivic, Inc. v. Governor of New Jersey*, --- F.4th ----, 2025 WL 2046488, at *6–7 (3d Cir. July 22, 2025), offers no help to the United States. There, the Third Circuit ruled that a state directly regulated the federal government by banning all contracts for immigration detention preventing the United States from contracting with anyone. But notably, the court cited approvingly *McHenry County*, explaining that it upheld a law where a state refused to detain immigrants on the federal government's behalf but left the federal government free to contract with private parties. *Id.* Colorado has taken that same lawful approach here.

Dated: August 25, 2025

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General of Colorado

By: /s/ David Moskowitz
David Moskowitz
*Deputy Solicitor General*
Talia Kraemer
*Assistant Solicitor General*
Sam Wolter
*Assistant Attorney General*
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
David.Moskowitz@coag.gov
Talia.Kraemer@coag.gov
Samuel.Wolter@coag.gov

*Counsel for the State of Colorado, Jared*
*Polis, and Philip Weiser*

## CERTIFICATE OF SERVICE

     I hereby certify that on August 25, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>/s/ David Moskowitz</u>
*Deputy Solicitor General*