UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01391-GPG-KAS

UNITED STATES OF AMERICA,

    Plaintiff

v.

STATE OF COLORADO;
JARED POLIS, Governor of Colorado, in his official capacity;
COLORADO GENERAL ASSEMBLY;
PHILIP WEISER, Attorney General of Colorado, in his official capacity;
CITY AND COUNTY OF DENVER;
DENVER CITY COUNCIL;
MIKE JOHNSTON, Mayor for the City and County of Denver, in his official capacity;
DENVER SHERIFF DEPARTMENT;
ELIAS DIGGINS, Sheriff of Denver, Colorado, in his official capacity.

    Defendants

---

**DEFENDANT COLORADO GENERAL ASSEMBLY'S MOTION TO DISMISS PLAINTIFF'S CLAIMS AGAINST IT PURSUANT TO FED.R.CIV.P. 12(b)(6)**

---

Defendant Colorado General Assembly, through its undersigned counsel,[1] respectfully requests the Court to dismiss Plaintiff's claims against it – as set forth in its First Amended Complaint ("FAC") – pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state

---

[1] Undersigned counsel appears in these proceedings separately on behalf of the Colorado General Assembly – acting through its Committee on Legal Services and Office of Legislative Legal Services – regarding issues directed specifically to "the performance of the powers, duties, and functions" of the General Assembly pursuant to C.R.S. §2-3-501 and §2-3-1001.

a claim against it upon which relief can be granted.[2] In support of this request, the General Assembly submits as follows:

### I. Plaintiff's Claims Against the Colorado General Assembly

In its FAC, the United States asserts that each of the Defendants – state and municipal – have enacted and/or are implementing and enforcing, various "Sanctuary Laws" – FAC ¶ 3 – "that by intent and design interfere with and discriminate against the Federal Government's enforcement of federal immigration law." Id. This, the United States asserts, violates the Supremacy Clause – U.S. CONST. art. VI, cl. 2 – whereby "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." The United States seeks declaratory and injunctive relief, costs, and fees against all of the Defendants – including, specifically and directly, Colorado's state legislature.

With regard specifically to the Colorado General Assembly, the reference is to purely *legislative* actions: the passage of four bills over the course of seven years – House Bill 19-1124, Senate Bill 21-131, House Bill 23-1100, and Senate Bill 25-276 – FAC ¶¶ 35-62 – the *enforcement* of which the United States asserts "impede the Federal Government's ability to regulate immigration and take enforcement actions against illegal aliens by preventing *state law enforcement officials* from assisting with federal civil immigration enforcement." FAC ¶75 (emphasis added).

---

[2] Undersigned counsel for the Colorado General Assembly certifies that he separately conferred with Plaintiffs' counsel regarding this Motion on August 21, 2025, pursuant to Civil Practice Standard 7.1B(b).

The four pieces of legislation at issue are attached as Exhibits A, B, C, and D to this Motion.[3] HB19-1124 (Ex. A) provides that state and local law enforcement officers may not arrest, detain, or maintain custody of a person beyond the time when that person is legally eligible for release – unless presented with a new judicial warrant – under a federal civil immigration detainer request; yet explicitly authorizes state and local officers and employees to cooperate with and assist federal authorities in the execution of a federal judicial warrant or to honor a writ issued by any state or federal judge concerning transfer of the person to federal custody. The statute also restricts probation officers and employees from providing an individual's personal information to federal immigration authorities, though allows law enforcement – with appropriate disclosure – to coordinate telephone or video interviews by immigration authorities with incarcerated individuals.

SB21-131 (Ex. B) protects personal identifying information from disclosure by state employees in connection with federal immigration enforcement "except as required by federal or state law or as required to comply with a court-issued subpoena, warrant, or order" – and further limits state agency inquiry into a person's immigration status "except as required by state or federal law;" and limits the use of personal information in

---

[3] The Court may consider these exhibits within the context of this Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) – without conversion into a motion for summary judgment under Fed.R.Civ.P. 56 – as they are "central to the plaintiff's claim" – especially and particularly against the Colorado General Assembly – and "indisputably authentic cop[ies]" of the subject legislation, publicly available at all times on the General Assembly's official website (*https://leg.colorado.gov/bills*). *GFF Corporation v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997); *accord*, *Alvarado v. KOB-TV LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

a state database for federal immigration enforcement "unless required by federal or state law or to comply with a court-issued subpoena, warrant, or order."

HB23-1100 (Ex. C) prohibits a state or local governmental entity from entering into an agreement or to use public resources for detention of individuals in a privately owned, managed, or operated immigration detention facility, or from entering into its own agreement to detain individuals for federal civil immigration purposes.

Finally, SB25-276 (Ex. D), in pertinent part, (1) prohibits a jail custodian from delaying the otherwise requisite release of a defendant who has posted bond or been granted a personal recognizance bond solely to facilitate a federal civil immigration enforcement operation; (2) extends a prohibition upon state and local peace officers arresting or detaining individuals solely on the basis of a federal civil immigration detainer request; and (3) prohibits state pretrial officers and employees of various state public services offices from collecting or providing to federal immigration authorities – "*except as required by federal or state law*" or as necessary to perform their duties – an individual's personal information without a subpoena, warrant, or order issued by a federal judge or magistrate.

## II. Assertion of Claims Specifically Against Colorado's Legislature

Repeatedly invoking the Supremacy Clause – though omitting any reference to the Tenth Amendment (U.S. CONST. amend. X) and its broad reservation of all "powers not delegated to the United States by the constitution, nor prohibited by it to the states . . . to the states, respectively, or to the people" – the United States takes express exception in this action to the enumerated *legislative* actions themselves. As discussed

4

below, the United States claims the constitutional power to "commandeer" not only Colorado's state and local executive officers and employees into direct service of its asserted federal objectives – *but the right and power to commandeer and restrict the state's legislature and legislative processes into its service as well*. In effect, the United States is requesting this Court to direct Colorado's state legislature as to what it may or may not legislate.

The Colorado General Assembly, consisting of a senate and house of representatives, is the governmental body in which – subject to the people's reserved powers of initiative and referendum – the legislative power of the State of Colorado is vested. COLO. CONST. art. V, sec. 1(1). The General Assembly serves no other function. The Colorado Constitution also contains its own Bill of Rights – COLO. CONST. art. II – including specifications of the right to due process of law (COLO. CONST. art. II, sec. 25), protection from unreasonable and warrantless government intrusions, searches, and seizures (COLO. CONST. art. II, sec. 7[4]), protection from cruel and unusual punishment (COLO. CONST. art. II, sec. 20), protection of the property rights of aliens (COLO. CONST. art. II, sec. 27), and access to justice (COLO. CONST. art. II, sec. 6). Like its federal counterpart, the Colorado Constitution was adopted by "We, the people" – COLO.

---

[4] This section is interpreted and applied to include protection of "a person's legitimate expectation of privacy from unreasonable government intrusions." *See, e.g., People v. Sporleder*, 666 P.2d 135, 139-40 (Colo. 1983).

CONST. Preamble – and its Bill of Rights declares that "All persons" (not just citizens) have inalienable rights. COLO. CONST. art. II, sec. 3.[5]

In this context, it is certainly within the legislative power of the Colorado General Assembly to consider, discuss, debate, and enact statutes from time to time that a majority of its elected members deem appropriate to protect and further these state (as well as federal) constitutional rights. It is further the responsibility and prerogative of the General Assembly and its members to assure, as best they are able, that the scarce resources of the State are directed, allocated, and used for purposes commensurate with their understanding of the interests of the people of the State.

The United States may find fault with the resulting legislation – under the Supremacy Clause or otherwise – and it certainly has the right to challenge the *enforceability, application,* or *implementation* of this legislation in an action directed against the branches and personnel of the Colorado's state government and affected local governments charged with enforcement, application, and implementation. It is doing so in this action – and those branches and personnel are duly responding. But joinder of the Colorado General Assembly itself – even for purely declaratory, let alone

---

[5] *Cf.* – at the federal level – *Boumediene v. Bush*, 553 U.S. 723, 732 (2008); *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886). Even in the context of disagreements on the Supreme Court regarding *interpretation and application* of the Fifth Amendment's "due process" protections for persons in the country illegally, there is *no disagreement that the Fifth Amendment applies* to such persons. *See, e.g.*, *Zadvydas v. Davis*, 553 U.S. 678 (2001), 693-94 (opinion of the court: "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"); 718 (dissent: "As persons within our jurisdiction, the aliens are entitled to the protection of the Due Process Clause").

injunctive, purposes – necessarily requests this Court to specifically direct the legislative branch of Colorado's state government as to what it may or may not *legislate.* It asks this Court to permit the federal government to "commandeer," constrain, and dictate *the contents and results of the state legislative process itself* – in the interests of promoting its own federal policy objectives. *Cf., Murphy v. National Collegiate Athletic Association*, 584 U.S. 453, 474 (2018) – "It is as if federal officers were installed in state legislative chambers and were armed with the authority to stop legislators from voting on any offending proposals. A more direct affront to state sovereignty is not easy to imagine" [opinion of the Court by Justice Alito].

*See, also*, *New York v. United States*, 504 U.S. 144, 161 (1992) ("Congress may not simply 'commandeer the *legislative* processes of the States by directly compelling them to enact and enforce a federal regulatory program'" (emphasis added) – quoting *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264, 288 (1981). And it is no less an affront when the requested directive is addressed to what the state legislature "must *not*" do rather than to what it "must" do. *Murphy*, 584 U.S. at 474-75.[6]

---

[6] The Court's analysis in *Murphy* resonates with the distinct principle of absolute legislative immunity under federal law for state (and local) legislators (and others performing legislative functions) – reflecting the English common law "tradition of legislative freedom." *Cf., Tenney v. Brandhove*, 341 U.S. 367, 375 (1951); *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719 (1980) (involving requests for prospective declaratory or injunctive relief). Yet in the present case, Colorado's legislature itself – purely in its capacity as the State's legislative body – is a specifically named defendant against which both declaratory and injunctive relief are directly sought.

Respectfully – setting aside the merits and enforceability of the specific legislation at issue – the Colorado General Assembly is not a proper party in this action. There is no justifiable relief can properly be entered against it.

### III. The United States May Not Commandeer Any of the Defendants To Enact or Enforce Federal Immigration Laws and Programs

The Colorado General Assembly does not contest the primacy of federal regulation of immigration under the Supremacy Clause of the United States Constitution. U.S. CONST. art. VI, cl. 2. It does, however, object – under the Tenth Amendment (U.S. CONST. amend. X) – to being commandeered – along with the other state and local government Defendants in this action – into the federal government's service.

The Supreme Court has emphasized that the Constitution "confers upon Congress the power to regulate individuals, not States." *Murphy*, *supra*, 584 U.S. at 477, quoting *New York v. United States,* 505 U.S. 144, 166 (1992). "While Congress has substantial powers to govern the Nation directly, including in areas of intimate concern to the States, the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions." *New York,* 505 U.S. at 162 (referring primarily to the states' legislative activities). Nor may Congress "conscript[] the State's officers directly." *Printz v. United States*, 521 U.S. 898, 935 (1997) (referring specifically to executive branch officers and personnel). "The

Constitution thus contemplates that a State's government will represent and remain accountable to its own citizens." *Id*. at 920.[7]

The remarkable degree to which the United States is attempting in this action to co-opt and control – for its own distinct federal policy purposes – the rights and powers reserved to the states under the Tenth Amendment is evident from the nature of its asserted objections to the state statutes at issue. In fact, the preemptive prerogatives asserted in this action far exceed what Congress itself has authorized and asserted in the federal statutes now being invoked.

The United States complains, first, that HB19-1124 – particularly as further specified and clarified in application under SB 25-276 (FAC ¶¶ 57- 62) – prevents specified state officers and employees "from complying with immigration detainers or civil immigration warrants." FAC ¶¶ 75, 80. A "civil immigration detainer" allows an officer or employee of the federal Immigration and Naturalization Service to take various actions – including interrogation, warrantless searches, and warrantless arrests – of aliens or "persons believed to be aliens." 8 U.S.C. §1357(a)-(f). 8 U.S.C. §1357(g) further authorizes the United States Attorney General to enter into written agreements with a State or political subdivision of a State to "carry out such function at the expense of the State or political subdivision" – though, respectful of the Tenth Amendment and

---

[7] As very recently stated by the United States District Court for the Northern District of Illinois in a suit brought by the United States quite similar to this one, "while Congress has many enumerated powers, and may even overtake state law, it may not wield States as federal tools." *United States v. State of Illinois, et al.*, 2025 U.S. Dist. Lexis 142735 at *24, 2025 WL 2098688 (July 25, 2025).

the State's independent legislative processes – only "to the extent consistent with State and local law." *Id*. at (g)(1). Notably, the federal statute goes further to specify that "Nothing in this subsection shall be construed to require any State or political subdivision of a State to enter into an agreement with the Attorney General under this subsection." 8 U.S.C. §1357(g)(9)."

Notwithstanding this apparent Congressional sensitivity to the Tenth Amendment in the context of agreements with state and local governments, the United States now submits that HB19-1124 and SB25-276 violate the Supremacy Clause. In fact, HB19-1124 – noting that warrantless arrests are presumed to be unconstitutional in Colorado[8] and that "[c]ontinued detention of an inmate under a Federal Civil Immigration Detainer constitutes a new arrest under state law" – simply prohibits state and local officers and employees from engaging in these activities without appropriate judicial authorization. HB19-1124 further provides – at new C.R.S. §24-76.6-102(4) – that "[n]othing in this section precludes any law enforcement officer or employee from cooperating or assisting federal immigration authorities in the execution of a warrant issued by a federal judge or magistrate or honoring any writ issued by any state or federal judge concerning the transfer of a prisoner to or from federal custody."

The United States then complains that HB19-1124, SB21-131, and HB23-1100 collectively restrict a variety of state officers and employees from "sharing critical immigration information" – FAC ¶75 – with federal immigration authorities. The United States omits to note that this restriction explicitly states "except as required by federal or

---

[8] See *People v. Burns*, 615 P.2d 688 (1980).

state law or as required to comply with a court-issued subpoena, warrant, or order." C.R.S. §24-74-103; §24-74-104(1) and (2); §24-74-105(1)(a), (b); §24-72-204(7)(b)(I), (IV); C.R.S. §42-1-206(3.5)(b). The United States further objects to Colorado prohibiting any state or local government agency or personnel from entering into or renewing an "immigration detention agreement" (*i.e.*, an agreement "to detain individuals for federal civil immigration purposes"). C.R.S. §24-76.7-101 – 103. Detention, however, is one of the functions explicitly included in the context of agreements that Congress has specified only that the Attorney General "*may*" – *i.e.*, is *allowed* to – enter into with States and their political subdivisions under 8 U.S.C. §1357(g)(1), and regarding which 8 U.S.C. §1357(g)(9) expressly provides that "Nothing in this subsection shall be construed to *require* any State or political subdivision of a State to enter into an agreement with the Attorney General under this subsection" (emphasis added).[9]

The theme throughout the United States' FAC is that it has the right – even without clear Congressional authorization or mandate – to compel the State of Colorado – and directly conscript its officers, employees, and most alarmingly its own legislature –

---

[9] Newly cited by the United States in its FAC – at ¶80 – is a very recent decision from the Third Circuit Court of Appeals for the proposition that it is a violation of the Supremacy Clause to restrict the ability of state and local governments to detain people for civil immigration violations. *CoreCivic, Inc. v. Governor of New Jersey, et al.*, 2025 U.S.App.Lexis 18106, 2025 WL 2046488 (3d. Cir. July 22, 2025). The issue in that case, however, was New Jersey's banning of *private parties* – not state agencies or employees – from entering into contracts directly with the *federal government* for the provision of detention services to the federal government – thus regulating and discriminating against the federal government's own independent ability to contract with willing private counterparties within its jurisdiction. That is very different from commandeering by fiat the state's own resources and personnel – let alone its own legislature – for federal purposes.

to participate in such manner as the federal executive branch may direct in the administration of a federal regulatory program. This, however, is precisely what the Supreme Court has said that the United States does *not* have the right or power to do (for any purpose) – even with explicit Congressional authorization (absent here) – under our federal Constitution. "The Federal Government may not compel the States *to enact or administer* a federal regulatory program." *Printz v. United States*, *supra*, 521 U.S. at 933 (1997) (emphasis added), quoting *New York v. United States*, *supra*, 505 U.S. at 188. And even "Congress cannot circumvent that prohibition by conscripting the State's officers directly" – *Printz*, 521 U.S. at 935. Nor, as discussed above, may Congress – let alone the federal Executive wholly without explicit Congressional authorization – conscript or direct the State legislature to mandate or facilitate the same end. *Cf.*, *Murphy v. National Collegiate Athletic Association*, *supra*, 584 U.S. at 475.

## IV. Conclusion

The Colorado General Assembly respectfully requests the Court to dismiss the entirety of the United States' First Amended Complaint against all Defendants with prejudice. Most critically, the Colorado General Assembly requests the Court to dismiss the claims asserted directly against it – the State's legislative body. Finally, the Colorado General Assembly requests such additional relief as this Court may deem just and proper.

Respectfully submitted this 25th day of August, 2025.

By: *s/Edward T. Ramey*
Edward T. Ramey
Martha M. Tierney
Tierney Lawrence Stiles LLC
225 East 16th Avenue, Suite 350
Denver, Colorado 80203
Phone: (303) 949-7676
E-mail:  eramey@TLS.legal
         mtierney@TLS.legal

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2025, I filed with the Court and served upon all parties herein a true and complete copy of the foregoing **DEFENDANT COLORADO GENERAL ASSEMBLY'S MOTION TO DISMISS PLAINTIFF'S CLAIMS AGAINST IT PURSUANT TO FED.R.CIV.P. 12(b)(6)** by e-filing with the CM/ECF system maintained by the Court.

*s/Edward T. Ramey*