IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01391-GPG-KAS

UNITED STATES OF AMERICA,

     Plaintiff,

v.

STATE OF COLORADO,
JARED POLIS, Governor of Colorado, in his official capacity,
COLORADO GENERAL ASSEMBLY,
PHILIP WEISER, Attorney General of Colorado, in his official capacity,
CITY AND COUNTY OF DENVER,
DENVER CITY COUNCIL,
MIKE JOHNSTON, Mayor for the City and County of Denver, in his official capacity,
DENVER SHERIFF DEPARTMENT, and
ELIAS DIGGINS, Sheriff of Denver, Colorado, in his official capacity,

     Defendants.

---

**CITY AND COUNTY OF DENVER'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

---

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

I.    The Immigration and Nationality Act allows, but does not require, cooperation
      between state, local, and federal government with respect to federal civil
      immigration enforcement. .......................................................................................... 1

II.   Denver adopted the Challenged Laws to ensure efficient and judicious use of
      city resources. ........................................................................................................ 3

III.  Plaintiff files this lawsuit to conscript Denver into helping the current federal
      administration achieve its political objectives regarding civil immigration
      enforcement. ........................................................................................................... 6

ARGUMENT ................................................................................................................ 7

I.    Plaintiff's preemption claim fails because The Challenged Laws are not
      preempted by federal law........................................................................................ 7

      A.   The Challenged Laws are not conflict preempted. ..................................... 8
           1.   Compliance with both federal and local law is possible. ....................... 8
           2.   The Challenged Laws are not obstacles to the accomplishment
                and execution of the objectives of federal immigration law. ................. 9
                a.   The INA does not require local law enforcement to
                     participate in federal civil immigration enforcement...................... 9
                b.   Any attempt to compel state or local cooperation
                     with federal civil immigration enforcement would
                     contravene the Tenth Amendment's anti-commandeering
                     principle. ........................................................................... 12
      B.   The Challenged Laws are not expressly preempted by federal law. ....... 14
           1.   Sections 1373(a) and 1644 lack preemptive force because
                they do not regulate private actors. ................................................ 16
           2.   Sections 1373(a) and 1644 cannot preempt the Challenged
                Laws because Sections 1373(a) and 1644 are unconstitutional
                under the Tenth Amendment. ........................................................ 17

3.    Sections 1373(a) and 1644 do not preempt the Challenged
Laws because the Challenged Laws are consistent with them. ...... 19

II.    Plaintiff's unlawful discrimination and unlawful regulation claims fail because
the Challenged Laws neither discriminate against nor regulate the federal
government.................................................................................................. 20

A.    The Challenged Laws are not discriminatory. ............................................ 21

B.    The Challenged Laws do not seek to regulate Plaintiff. ............................ 22

III.    Plaintiff's claims against Denver City Council, Denver Sheriff Department,
Mayor Johnston, and Sheriff Diggins duplicative of the claims against
Denver and should be dismissed........................................................................ 24

IV.    Because the legal deficiencies in Plaintiff's FAC cannot be cured by
amendment, Plaintiff's claims should be dismissed with prejudice. ................... 25

CONCLUSION ......................................................................................................... 25

Defendants City and County of Denver, Denver City Council, Mike Johnston, Denver Sheriff Department, and Elias Diggins (collectively, "Denver") move to dismiss Plaintiff United States of America's First Amended Complaint (FAC) under Federal Rules of Civil Procedure 12(b)(6). Plaintiff opposes the motion.

## INTRODUCTION

In 2017, Denver passed the Public Safety Enforcement Priorities Act to ensure limited city resources are not used for federal civil immigration enforcement. Now, Plaintiff seeks to nullify Denver's sovereign choices. Its attempt has no basis in law, logic, or policy.  It is nothing more than political theater.

Consequently, Plaintiff's claims lack merit. Plaintiff's preemption claim fails because the Challenged Laws are not preempted—expressly or by conflict—by the Immigration and Nationality Act ("INA"). Likewise, Plaintiff's unlawful discrimination and unlawful regulation claims fail because the Challenged Laws neither discriminate against nor regulate the federal government. Because Plaintiff fails to state plausible claims against Denver, the Court should dismiss its claims with prejudice.

## BACKGROUND

**I.    The Immigration and Nationality Act allows, but does not require, cooperation between state, local, and federal government with respect to federal civil immigration enforcement.**

The INA "sets out the 'terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the county." *Kansas v. Garcia*, 589 U.S. 191, 196 (2020) (citation omitted). The INA's relevant provisions fall within two broad categories: (1) provisions relating to voluntary cooperation between federal and

state/local governments, and (2) provisions relating to the use of immigration detainers and administrative warrants.

For the first category, the INA does not require cooperation between federal, state, and local governments with respect to federal civil immigration enforcement. Under 8 U.S.C. § 1357(g)(1), the Attorney General may enter into written agreements with local governments that allow local law enforcement officers to carry out certain "function[s] of an immigration officer," such as investigating, apprehending, or detaining "aliens in the United States." These agreements are permissible "to the extent consistent with State and local law," and entirely voluntary on behalf of local governments. *Id.* "Nothing in this [provision]," the INA explains, "shall be construed to require any State or political subdivision of a State to enter into an Agreement with the Attorney General." 8 U.S.C. § 1357(g)(9). Likewise, the Attorney General is authorized to enter into "a cooperative agreement" with local governments for immigration detention. 8 U.S.C § 1103(a)(11)(B). These contracts are also entirely voluntary and apply only to local governments "which agree[]" to assist these federal civil immigration enforcement aims.

Second, the INA sets forth provisions about immigration detainers and administrative warrants. An immigration detainer "advise[s] another law enforcement agency that the [Department of Homeland Security] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. 287.7(a). Thus, it operates as a *request* that the agency "advise the Department, prior to the release of the alien" so the federal government can "arrange to assume

2

custody." *Id.* Because immigration detainers are merely requests from the federal government, the INA does not require local governments to cooperate with them.

As for administrative warrants, they provide federal immigration officers the authority to arrest and detain an individual pending a decision on whether the individual will be removed from the United States. *See id.* Unlike a judicial warrant, an administrative warrant is not a criminal warrant signed by a federal judge or magistrate. *See id.* Rather, they are civil immigration documents, and any actions taken under these warrants represent only federal *civil* immigration enforcement activities. As explained below, *see infra*, Section IV(A)(1)(b), the INA does not require local governments to take any action with respect to immigration detainers or administrative warrants.

## II.    Denver adopted the Challenged Laws to ensure efficient and judicious use of city resources.

In 2017, Denver enacted the Public Safety Enforcement Priorities Act (Denver Ordinance 940-17), which it codified as Denver Revised Municipal Code ("D.R.M.C.") sections 28-250 through 28-253. *See* Ex. A (Ordinance).[1]

The Ordinance's preamble illuminates Denver's stated aims for enacting these laws. First, Denver sought to promote a welcoming environment for all its residents, including tens of thousands of undocumented immigrants who contribute to Denver's

---

[1] The Court can take judicial notice of municipal ordinances. *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1221 n.3 (10th Cir. 2021) (citing Fed. R. Evid. 201). The codified version of the Ordinance can be found at https://library.municode.com/co/denver/codes/code_of_ordinances?nodeId=TITIIREMU CO_CH28HURI_ARTVIIIPUSAENPRAC.

3

economy. Second, Denver wanted to protect those residents' rights to due process and to be free from unreasonable searches and seizures. Third, Denver invoked the Tenth Amendment's anticommandeering principle. Fourth, Denver sought to encourage its undocumented residents to feel safe to access public programs, attend school, report crimes, and participate in the legal system. Finally, Denver invoked the legacy of community trust and collaboration in its police, sheriff, and fire departments. *Id.* at 1–3 (preamble). The same day, Mayor Michael Hancock issued Executive Order No. 142, citing many of the same policy goals. *See* Ex. B (Executive Order) at 1–2 (purpose).[2]

The Ordinance accomplishes these goals in four ways: (1) by restricting the use of city funds and resources to participate in federal civil immigration enforcement (Section 28-250); (2) by restricting Denver's ability to contract to assist in federal civil immigration enforcement (Section 28-251); (3) by limiting federal immigration authorities' access to Denver jails (Section 28-252); and (4) by giving federal immigration authorities the same access as the general public to residents' personal information (Section 28-253).

***D.R.M.C. § 28-250.*** This section prohibits Denver personnel from "us[ing] any city funds or resources to assist in the enforcement of federal immigration laws," including assisting with civil immigration investigations, detentions, or arrests; requesting or sharing information about someone's national origin, immigration or citizenship status (except as required by federal law); and initiating a law-enforcement contact "solely for purposes of determining the person's national origin, immigration or citizenship status." *Id.* at (a)(1)–

---

[2] Likewise, the Court can take judicial notice of executive orders. *Peoples v. Long*, No. 1:20-cv-02116-RBJ-NYW, 2020 WL 9076288, at *9 (D. Colo. Dec. 16, 2020).

4

(5). City personnel, however, may assist federal immigration authorities in executing a federal judicial warrant, keeping the peace, protecting public safety, enforcing criminal laws, and may contract with the federal government to transport federal detainees through Denver International Airport. *Id.* at (b)–(d).

*D.R.M.C. § 28-251.* This section prohibits Denver personnel from contracting to "directly or indirectly assist in the enforcement of federal immigration laws" or to collect or share personal information about someone's national origin, immigration or citizenship status (except as required by federal law). *Id.*

*D.R.M.C. § 28-252.* This section prohibits Denver personnel from allowing federal immigration authorities without a federal judicial warrant to access secure areas of any Denver jails "for the purpose of conducting investigative interviews or any other purpose related to the enforcement of federal immigration laws." *Id.* at (a). This section makes clear, however, that Denver personnel may coordinate telephone or video interviews between federal immigration authorities and detainees if the detainee has first been advised about the interview's purpose and her legal rights. *Id.* at (b).

*D.R.M.C. § 28-253.* This section prohibits Denver law enforcement from detaining anyone based on a civil immigration detainer and from sharing personal information with federal immigration authorities based on an administrative warrant. *Id.* at (c). But it makes clear that when federal immigration authorities request it, city personnel may provide a detainee's release date if the detainee is promptly advised about the request and her legal rights (and advised again on the detainee's release date). *Id.* at (d). The Denver

Sheriff Department must maintain records of all such requests and provide quarterly reports to the City Council and the Mayor. *Id.* at (e)–(f).

**Executive Order.** Relevant here, the Executive Order simply directs the City Attorney to train city employees to comply with the Ordinance (Ex. B ¶ 18.0), instructs department heads to report federal attempts to use Denver resources to enforce civil immigration laws (*id.* ¶ 19.0) and informs all city personnel that compliance with the Executive Order is mandatory (*id.* ¶ 20.0).

Together, the Challenged Laws reflect Denver's commitment to ensuring the judicious and efficient use of city resources, as well as Denver's commitment to prioritizing the safety and wellbeing of its residents.

III.    **Plaintiff files this lawsuit to conscript Denver into helping the current federal administration achieve its political objectives regarding civil immigration enforcement.**

On July 25, 2025, Plaintiff filed the operative FAC against Denver and the other defendants. *See* FAC at 1. Plaintiff alleges, among other things, that the Challenged Laws violate the Supremacy Clause and seeks an order enjoining their enforcement. *See* FAC at 27–28. This lawsuit is nothing more than an attempt by the Administration to subvert Denver's governance and further the Administration's political goals. Aside from Denver, Plaintiff has sued Chicago (No. 1:25-cv-1285), New York City (1:25-cv-4084), Los Angeles (No 2:25-cv-05917), Newark, Jersey City, Paterson, and Hoboken (2:25-cv-05081-EP-AME), and Rochester (25-cv-06226-FPG-MJP). Though each city has different laws, the complaints are essentially the same. This attempt fails as a matter of law. Denver moves to dismiss the FAC in its entirety.

## **LEGAL STANDARD**

To survive under Rule 12(b)(6), a complaint "must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## **ARGUMENT**

The FAC advances three claims. It asserts that the Challenged Laws violate the Supremacy Clause because they (1) are preempted by the INA, (2) unlawfully discriminate against the federal government, and (3) unlawfully regulate the federal government. FAC at 26–27. Each should be dismissed for failure to state a claim.

**I.    Plaintiff's preemption claim fails because the Challenged Laws are not preempted by federal law.**

In its first claim, Plaintiff asserts the Challenged Laws are preempted by federal law. FAC ¶¶ 91–92. There are three types of preemption: conflict, field, and express. Conflict preemption occurs "either when compliance with both the federal and state laws is a physical impossibility, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010) (citation omitted). Field preemption occurs "when the federal scheme of regulation is so pervasive that Congress must have intended to leave no room for a State to supplement it." *Id.* Express preemption occurs "when the language of the federal statute reveals an express congressional intent to preempt state law." *Id.*

7

Here, Plaintiff asserts conflict and express preemption. FAC, ¶¶ 91–92. Neither apply to the Challenged Laws.

### A. The Challenged Laws are not conflict preempted.

A local law may be preempted when it is in irreconcilable conflict with federal law because (1) compliance with both laws is impossible or (2) the state law is an obstacle to the accomplishment and execution of the objective of the federal law. *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963); *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). But it is possible to comply with both the Challenged Laws and federal law—and indeed, such compliance is specifically contemplated under the Challenged Laws. Nor do the Challenged Laws present an obstacle to accomplishing and executing federal immigration laws.

### 1. Compliance with both federal and local law is possible.

Local law must yield only "where compliance with both federal and state regulations is a physical impossibility." *Fla. Lime & Avocado Growers, Inc.*, 373 U.S. at 142–43. No physical impossibility exists here. In fact, the Ordinance explicitly avoids it. FAC ¶ 64; *see also supra*, Section I.A. The Ordinance directs compliance with federal law for collecting and disclosing immigration information. And to the extent ICE agents present judicially approved warrants and writs—as opposed to administrative warrants and detainers—the Ordinance authorizes full compliance and cooperation. D.R.M.C. §§ 28-250(b), -252(a); FAC ¶ 66. The Executive Order likewise sets forth procedures to "[e]nsur[e] compliance with" applicable federal law. *See* Executive Order 142-18.0.

8

Thus, compliance with both federal and local law is possible—and required—under the Challenged Laws. As further explained below, under federal law, state and local cooperation with federal civil immigration enforcement activities is voluntary. *See infra*, Section IV(A)(1)(b). Any argument that these local laws are conflict preempted on this basis therefore fails. The Challenged Laws are not obstacles to the accomplishment and execution of the objective of federal immigration law.

> ## 2. The Challenged Laws are not obstacles to the accomplishment and execution of the objectives of federal immigration law.

The INA does not require local law enforcement to assist with federal civil immigration enforcement, the Challenged Laws are no obstacle to the enforcement of federal immigration law. Any contrary conclusion would run afoul of the anti-commandeering principle of the Tenth Amendment.

> ### a. The INA does not require local law enforcement to participate in federal civil immigration enforcement.

The INA does not require municipalities to enforce federal immigration law. In other words, the INA does not require Denver to do anything the Challenged Laws restrict or prohibit. To the extent Plaintiff points to local provisions forbidding contracts with the federal government, cooperation with immigration detainers, and access to local jails as obstacles to federal immigration law, the contentions are unavailing.

First, the INA does not require state and local governments to execute contracts to advance federal immigration enforcement efforts. Plaintiff points to two provisions, 8 U.S.C. §§ 1357(g) and 1103(a)(11)(B), that allow contracts between the federal government and local government to further federal immigration enforcement. *See* FAC

¶ 65. Neither require local governments to enter into any such contracts. Contracts under §§ 1357(g) and 1103(a)(11)(B) are voluntary. *See* 8 U.S.C. § 1103(a)(11)(B) (providing for contracts with "any State or unit of local government *which agrees* to provide guaranteed bed space for persons detained by the Service" (emphasis added)); 8 U.S.C. § 1357(g)(9) ("Nothing in this subsection shall be construed to require any State or political subdivision of a State to enter into an agreement with the Attorney General under this subsection."); *United States v. Illinois*, No. 25-cv-1285, 2025 WL 2098688, at *23 (N.D. Ill. July 25, 2025) (explaining that § 1357(g) contracts are "permissible under the INA, not mandatory"). The Challenged Laws, therefore, reflect nothing more than an appropriate exercise of Denver's discretion to determine whether it will enter into *voluntary* contracts.

Plaintiff's arguments concerning immigration detainers and administrative warrants fare no better. An immigration detainer "advise[s] another law enforcement agency that the [Department of Homeland Security] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). A detainer is a "request" that the agency "advise the Department, prior to the release of the alien" so the federal government can "arrange to assume custody." *Id.* Plaintiff admits this. FAC, ¶ 28. Likewise, administrative warrants are "warrants for arrest for administrative immigration violations" issued by a federal agency, rather than a criminal warrant signed by a judge. *See* 8 C.F.R. § 287.5(e)(3).

Thus, as many courts have recognized, it is entirely voluntary for states and municipalities to cooperate with immigration detainers and administrative warrants. *See, e.g.*, *Galarza v. Szalczyk*, 745 F.3d 634, 645 (3d Cir. 2014) (concluding 8 C.F.R. § 287.7

10

"merely authorizes the issuance of detainers as requests to local [law enforcement agencies]" and "does not compel state or local [law enforcement] to detain suspected aliens subject to removal pending release to immigration officials"); *United States v. California*, 921 F.3d 865, 887 (9th Cir. 2019) ("[N]either an administrative warrant issued by federal authorities nor any other provision of law identified by the United States *compels* any action by a state or local official.") Denver is not required to honor immigration detainers or administrative warrants. Its decision is an exercise of its sovereign authority, not an obstruction of the federal government.

Plaintiff next contends the Ordinance impedes federal immigration enforcement by restricting ICE's access to local jails. *See* FAC ¶ 66. By limiting access to secure areas of local jails for federal civil immigration enforcement—absent presentation of a warrant issued by a federal judge or magistrate—Plaintiff argues the Ordinance "impede[s] federal immigration authority efforts to enforce immigration law." *Id.* ¶¶ 66, 69. But Plaintiff does not cite any provision of the INA that requires unfettered access to local jails for federal civil immigration enforcement activities. Denver is not required to allow federal immigration authorities access to local jails absent a judicial warrant.

In short, the INA gives state and local governments the option to assist the federal government with its civil immigration enforcement activities but does not require it. The decision of when to assist the federal government and to what extent, is left to the sound discretion of local governments. *See, e.g.*, *Illinois*, 2025 WL 2098688, at *23 (explaining the INA "gives States the option" to assist the federal government "but does not require it").

11

Refusing to assist with the federal government's regulatory aims does not constitute obstruction. Plaintiff essentially complains Denver is not as helpful as Plaintiff would like. "But refusing to help is not the same as impeding." *California*, 921 F.3d at 888 (citation omitted). "Merely because a state law 'inconveniences' the federal government does not render it preempted—'the repugnance must be so direct and positive that the two acts cannot be reconciled or consistently stand together.'" *Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 382 (D.N.J. 2020) (citation omitted), *aff'd*, 8 F.4th 176 (3d Cir. 2021)). Put differently, "[i]t would make no sense to hold that a federal statute premised on [local] cooperation preempts a [local] law withholding that cooperation." *McHenry Cnty. v. Raoul*, 44 F.4th 581, 592 (7th Cir. 2022).

Denver's decision not to assist with the federal government's civil immigration enforcement activities, therefore, is not "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Schoenhofer v. McClaskey*, 861 F.3d 1170, 1175 (10th Cir. 2017) (citation omitted); *see also Illinois*, 2025 WL 2098688, at *23 ("Because any collaboration under the INA is permissive, not mandatory, . . . .the Sanctuary Policies do not pose an obstacle."); *Nash v. Mikesell*, 557 P.3d 369, 377 (Colo. App. 2024) (explaining "a state's choice to refrain from participation [in federal immigration enforcement activities] 'cannot be invalid under the doctrine of obstacle preemption'" because state cooperation is voluntary (citation omitted)). Conflict preemption does not apply to the Challenged Laws.

> **b.    Any attempt to compel state or local cooperation with federal civil immigration enforcement would contravene the Tenth Amendment's anti-commandeering principle.**

12

Any contrary conclusion would effectively require local governments to assist the federal government with civil immigration enforcement., "[I]f the State, County, and City cannot control whether and how their employees [cooperate] with the federal government, they cannot affirmatively opt-out of enforcing federal immigration laws." *Illinois*, 2025 WL 2098688, at *17. That would run afoul of the anti-commandeering principle of the Tenth Amendment.

Under the Tenth Amendment, "all powers not explicitly conferred to the federal government are reserved to the states." *Galarza*, 745 F.3d at 643. "And conspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018). "The anti-commandeering doctrine 'simply represents the recognition' that the Constitution purposefully 'withh[e]ld from Congress the power to issue orders directly to the States.'" *Colorado v. U.S. Dep't of Just.*, 455 F. Supp. 3d 1034, 1058 (D. Colo. 2020) (quoting *Murphy*, 584 U.S. at 470–71). Thus, "the Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs." *Printz v. United States*, 521 U.S. 898, 925 (1997).

Several courts have concluded the anti-commandeering principle prevents the federal government from commandeering state resources to enforce federal immigration law. *See, e.g.*, *California*, 921 F.3d at 890 (upholding state restrictions on participating in immigration enforcement because the state "retains the right of refusal" under the Tenth Amendment); *McHenry Cnty.* 44 F.4th at 592 (same); *Galarza*, 745 F.3d at 644

13

(concluding compliance with federal immigration detainers is permissive and to hold otherwise would "violate the anti-commandeering principles inherent in the Tenth Amendment"); *Cisneros v. Elder*, No. 18cv30549, 2018 WL 7142016, at *5 (Colo. Dist. Ct. Dec. 6, 2018) (explaining federal immigration detainers are requests, not commands, because "if detainers were regarded as commands from the federal government to state or local officials, they would violate the Tenth Amendment's anti-commandeering principle"). Indeed, in a nearly identical case, a federal court rejected the very assertions Plaintiff advances, explaining that "[e]xtending conflict or obstacle preemption to the [challenged policies] would, in effect, 'dictate what a state legislature may and may not do'" in contravention of the Tenth Amendment. *Illinois*, 2025 WL 2098688, at *23 (quoting *Murphy*, 584 U.S. at 890).

"The anti-commandeering case law makes clear that the federal government 'may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program.'" *Colorado*, 455 F. Supp. 3d at 1058 (quoting *Printz*, 521 U.S. at 935). Applying this bedrock constitutional principle here, Denver cannot be conscripted into assisting with federal civil immigration enforcement efforts. The Challenged Laws are not conflict preempted by the INA.

### B. The Challenged Laws are not expressly preempted by federal law.

Plaintiff next contends the Challenged Laws are expressly preempted in part. *See* FAC ¶ 92. Plaintiff appears to argue the portions of the Challenged Laws that restrict disseminating information about an individual's immigration or citizenship status are

preempted by two provisions of the INA, 8 U.S.C. §§ 1373(a) and 1644. These statutes

provide:

> Notwithstanding any other provision of Federal, State, or local
> law, a Federal, State, or local government entity or official may
> not prohibit, or in any way restrict, any government entity or
> official from sending to, or receiving from, the Immigration and
> Naturalization Service information regarding the citizenship or
> immigration status, lawful or unlawful, of any individual.

8 U.S.C. § 1373(a); *see also* 8 U.S.C. § 1644 ("[N]o State or local government entity may

be prohibited, or in any way restricted, from sending to or receiving from the Immigration

and Naturalization Service information regarding the immigration status, lawful or

unlawful, of an alien in the United States."). These provisions do not expressly preempt

the Challenged Laws.

"Express pre-emption occurs when Congress 'define[s] explicitly the extent to

which its enactments pre-empt state law.'" *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d

1126, 1129 (10th Cir. 2007) (quoting *Choate v. Champion Home Builders Co.,* 222 F.3d

788, 792 (10th Cir. 2000)). Here, any contention that the Challenged Laws are expressly

preempted by 8 U.S.C. §§ 1373(a) or 1644 fails for three separate reasons. First, express

preemption cannot apply because the INA provisions at issue do not qualify as

preemption provisions. Second, §§ 1373(a) and 1644 cannot preempt the Challenged

Laws because, as several courts have held, they are unconstitutional under the Tenth

Amendment. Third, even if these provisions could exert preemptive force and were valid,

they would not preempt the Challenged Laws because the Challenged Laws are

consistent with §§ 1373(a) and 1644.

15

> **1.    Sections 1373(a) and 1644 lack preemptive force because they do not regulate private actors.**

"[E]very form of preemption is based on a federal law that regulates the conduct of *private actors*, not the States." *Murphy*, 584 U.S. at 479 (emphasis added). "In order for a federal statutory provision to preempt state law, it . . . 'must be best read as one that regulates private actors.'" *Colorado*, 455 Supp. 3d at 1058 (quoting *Murphy*, 584 U.S. at 477)); *see also Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (preemption occurs where "federal law 'imposes restrictions or confers rights on private actors' and 'a state law confers rights or imposes restrictions that conflict with the federal law'").

As many courts have held, 8 U.S.C. §§ 1373(a) and 1644 "regulate only state and local governments and do not, in any way, regulate private actors." *Cnty of Ocean,* 475 F. Supp. 3d at 372; *see also Colorado*, 455 F. Supp. 3d at 1059 ("By their plain terms, [sections 1373 and 1644] affect state and local government entities and officials; they do not regulate private actors as *Murphy* requires for preemption."); *Illinois*, 2025 WL 2098688, at *14 ("As a provision that addresses information sharing between government actors, § 1373 doesn't create or restrict the rights of any private actor"); *Oregon v. Trump*, 406 F. Supp. 3d 940, 972 (D. Or. 2019) ("In particular, the provisions create no rights or restrictions applicable to *private* actors; rather, by their terms, Sections 1373 and 1644 affect only state and local government 'entit[ies]' and 'official[s].'"); *City of Phila. v. Sessions*, 309 F. Supp. 3d 289, 329 (E.D. Pa. 2018) (Section 1373 "can[not] be best read as regulating private actors" because it instead "regulate[s] state and local government entities and officials").

16

The regulation of private actors, however, is "require[d] for preemption." *Colorado*, 455 F. Supp. 3d at 1059; *see also Ocean Cnty.*, 8 F.4th 176, 182 (3d Cir. 2021) ("A federal statute that does not regulate private actors cannot serve as a basis for preemption."). Because §§ 1373(a) and 1644 regulate state and local government entities, they are not preemptive provisions. *See, e.g.*, *Illinois*, 2025 WL 2098688, at *18 (concluding the United States' nearly identical preemption claim failed "because §§ 1373 and 1644 are not valid preemptive provisions"); *Ocean Cnty.*, 8 F.4th at 182 ("Our conclusion that neither § 1373 nor § 1644 regulates private actors is fatal to Appellants' argument that they preempt the Directive."). These provisions cannot preempt the Challenged Laws.

> **2.     Sections 1373(a) and 1644 cannot preempt the Challenged Laws because Sections 1373(a) and 1644 are unconstitutional under the Tenth Amendment.**

Sections 1373(a) and 1644 also cannot preempt the Challenged Laws because they violate the Tenth Amendment. As set forth above, the Tenth Amendment's anti-commandeering principle is the "expression of a fundamental structural decision incorporated into the Constitution, *i.e.*, the decision to withhold from Congress the power to issue orders directly to the States." *Murphy*, 584 U.S. at 470. The federal government may not "compel the States to implement, by legislation or executive action, federal regulatory programs." *Printz*, 521 U.S. at 925.

This principle is implicated here. Sections 1373(a) and 1644 both purport to issue orders directly to state and local governments, explicitly proscribing certain types of legislation and controlling state regulations on immigration-related information sharing. *See* 8 U.S.C. §§ 1373(a), 1644. This "negative proscription" commands state and local

17

governments "to govern according to Congress'[s] instructions," in violation of the anti-commandeering principle. *Illinois*, 2025 WL 2098688, at *16 (quoting *New York*, 505 U.S. at 162); *see also Murphy*, 584 U.S. at 481. For this reason, "several district courts have held that 8 U.S.C. §§ 1373 and 1644, and the conditions and certifications based thereon, violate the Tenth Amendment." *Colorado*, 455 F. Supp. 3d at 1045 (citing cases); *see also, e.g.*, *Oregon*, 406 F. Supp. 3d at 971; *City of Phila.*, 309 F. Supp. 3d at 329–30; *Illinois*, 2025 WL 2098688, at *16 (declining to reach question of the constitutionality of §§ 1373 and 1644 but reasoning they "are in tension with the Tenth Amendment"); *Ocean Cnty.*, 8 F.4th at 182 n.5. The constraints on local lawmaking in §§ 1373(a) and 1644 therefore do not comport with the Tenth Amendment.

Sections 1373(a) and 1644 purport to force state and local governments like Denver to assist with federal civil immigration activities. But "if the State, County, and City cannot control whether and how their employees share information with the federal government, they cannot affirmatively opt-out of enforcing federal immigration laws." *Illinois*, 2025 WL 2098688, at *17. Simply put, the Tenth Amendment bars the federal government from—as it tries to do here—conscripting Denver into furthering federal regulatory aims.

This conclusion is bolstered by the policies underlying the anti-commandeering principle. As "one of the Constitution's structural protections of liberty," the anti-commandeering principle "promotes political accountability" and "prevents Congress from shifting the costs of regulation to the States." *Murphy*, 584 U.S. at 473-74 (quoting *Printz*, 521 U.S. at 921). By purporting to regulate state and local legislative activities, these

18

statutory provisions infringe upon state sovereignty, undermining the "healthy balance of power between the States and Federal Government [that reduces] the risk of tyranny and abuse from either front." *See id.* at 473.  And by forcing local governments to implement federal immigration policies, these provisions obfuscate who is responsible for local policy, reducing political accountability and causing confusion among voters. *See id.* Further, they effectively shift the costs of implementing Plaintiff's desired programs by demanding that states administer them. "The power of the Federal Government would be augmented immeasurably if it were able to impress into its service–and at no cost to itself-the [employees] of the 50 States." *Printz*, 521 U.S. at 922. Each of these outcomes is antithetical to the anti-commandeering principle.

Sections 1373(a) and 1644 violate the Tenth Amendment. As invalid statutory provisions, they cannot expressly preempt the Challenged Laws.

> **3.    Sections 1373(a) and 1644 do not preempt the Challenged Laws because the Challenged Laws are consistent with them.**

Even if §§ 1373(a) and 1644 could exert preemptive force and were constitutional, they still would not expressly preempt the Challenged Laws.

The Ordinance prohibits "[r]equesting" or "[d]isseminating information about the national origin, immigration, or citizenship status of any individual." D.R.M.C. 28-250(a). This prohibition, however, it does not apply to the dissemination of such information "to the extent required by any federal . . . law or regulation, including by way of example 8 U.S.C. §1373 and 8 U.S.C. §1644." *Id.* Likewise, the Executive Order affirms Denver's commitment to "[e]nsuring compliance with . . . applicable federal [law]," including federal

19

law surrounding "the limitations around collecting and sharing national origin, immigration and citizenship data." Executive Order 142-18.0.

When possible, statutes should "be construed in such a way as to avoid doubtful constitutional questions." *See Arizona v. United States*, 567 U.S. 387, 415 (2012). Applying that principle here, the Challenged Laws would yield to §§ 1373(a) and 1644. This explicit deference to federal law removes the Challenged Laws from the purview of any express preemption in §§ 1373(a) and 1644. *See, e.g.*, *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1086 (9th Cir. 2022) ("Although [the challenged state statute] prohibits disclosing immigration-status information, that provision is subject to a savings clause requiring compliance with federal law . . . . and, therefore, compl[ies] with Section 1373."); *Illinois*, 2025 WL 2098688at *13 n.13; *Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 600 (2011). The Challenged Laws are not expressly preempted by the INA. Because the Challenged Laws are not subject to either conflict preemption or express preemption, this Court should dismiss Plaintiff's preemption claim.

## II. Plaintiff's unlawful discrimination and unlawful regulation claims fail because the Challenged Laws neither discriminate against nor regulate the federal government.

In Counts II and III, Plaintiff contends that the Challenged Laws contravene intergovernmental immunity. This doctrine prohibits cities from discriminating against or directly regulating the federal government. *United States v. Washington*, 596 U.S. 832, 838 (2022). Because the Challenged Laws neither treat Plaintiff worse than similarly situated others nor seek to control federal operations, they do not transgress intergovernmental immunity.

20

### A.  The Challenged Laws are not discriminatory.

In Count II, Plaintiff claims that the Challenged Laws "discriminate against federal immigration enforcement" by "singl[ing] out federal immigration officials, expressly and implicitly, for unfavorable and uncooperative treatment when other law enforcement officials are not so treated." FAC ¶¶ 60, 83. Not so.

The Challenged Laws would be unlawfully discriminatory only if they singled out the federal government for "less favorable treatment" or regulated the federal government "unfavorably on some basis related to [its] governmental status." *United States v. Washington*, 596 U.S. 832, 839 (2022) (internal quotation marks omitted). But discrimination is a relative concept; both prongs of this test require that Plaintiff identify another group that Denver treats more favorably than it treats the federal government, which Plaintiff makes no attempt to do. *See Washington v. United States*, 460 U.S. 536, 544–45 (1983) ("The State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them."); *McHenry County*, 44 F.4th at 594 ("Differential treatment is critical to a discrimination-based intergovernmental immunity claim."); *Illinois*, 2025 WL 2098688, at *25.

The Challenged Laws apply equally to any "enforcement of federal immigration laws." D.R.M.C. § 28-250(a). They restrict sharing information about a person's immigration status with *anyone*, not just the federal government. *Id.* § 28-250(a)(4). And to the extent Plaintiff characterizes these restrictions as predominantly impacting the federal government, it is unavailing. As many courts have recognized, "[t]he mere fact that [a local law] touches on an exclusively federal sphere is not enough to establish

21

discrimination." *McHenry Cnty.*, 44 F.4th at 594 ("); *see also California*, 921 F.3d at 881 ("[Discrimination] is not implicated when a state merely references or even singles out federal activities in an otherwise innocuous enactment.").

The same principles apply to the Challenged Laws' provisions that restrict Denver personnel vis-à-vis federal immigration authorities. This should come as no surprise as federal immigration authorities are the "primary enforcer of civil immigration law." *Illinois*, 2025 WL 2098688, at *25. Denver does not discriminate against Plaintiff simply because it refuses to participate in the INA's voluntary scheme. The closest Plaintiff comes to identifying a comparator is a hazy allegation that "other law enforcement officials" are treated better. FAC ¶ 95. But without naming a "specific law enforcement agency" and explaining "how it is similarly situated to ICE," *Illinois*, 2025 WL 2098688, at *25, Plaintiff's discrimination claim fails.[3]

### B. The Challenged Laws do not seek to regulate Plaintiff.

In Count III, Plaintiff baldly alleges that Denver's enforcement of the Challenged Laws "effects direct regulation of the Federal Government." FAC ¶ 87. Wrong again.

For the Challenged Laws to constitute direct regulation, they must "place[] a prohibition on the Federal Government," *McHenry Cnty.*, 44 F.4th at 592, "constrain[] the

---

[3] Denver treats Plaintiff the same as other law-enforcement agencies in enforcing criminal laws, *see, e.g.*, DCMC §§ 28-251(b), (c), 28-252(a), 28-253(a), (d), and likely treats Plaintiff better than other law-enforcement agencies by allowing city personnel to contract with Plaintiff for transporting federal detainees through Denver International Airport, *see id.* § 28-250(d), and by allowing the sheriff's department to respond to federal notification requests, *see* DCMC § 28-253(d).

conduct of federal agents and employees," *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010), or "improperly 'control' [federal] employee[s'] federal duties," *Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 206 (5th Cir. 2024).[4]

Here, the Challenged Laws control the conduct of Denver's own personnel, not Plaintiff's. Section 28-250 prohibits city employees from using city funds or resources to help enforce federal civil immigration law. Section 28-251 bars city personnel from entering contracts to assist with civil immigration enforcement or to collect or share personal information. Section 28-252 prevents city personnel from allowing federal immigration authorities to access secure areas of Denver jails[5] but does not prohibit city personnel from coordinating telephone or video interviews between detainees and federal immigration authorities. And Section 28-253 prohibits city law enforcement from detaining people based on immigration detainers and from sharing personal information based on administrative warrants; it also requires city law enforcement to make certain notifications

---

[4] In a recent 2–1 decision, the Third Circuit lowered the standard for direct regulation by prohibiting state laws that "substantially interfer[e] with [the federal government's] operations." *CoreCivic, Inc. v. Governor of N.J.*, —— F.4th ——, 2025 WL 2046488, at *7 (3d Cir. 2025). Though the majority conflated the tests for preemption and intergovernmental immunity, *see id.* at *11–12 (Ambro, J., dissenting), Denver satisfies even *CoreCivic*'s substantial-interference test. There, New Jersey banned *private parties* from contracting to provide immigration-detention services. This would have "destroy[ed] the federal government's marketplace" for private detention and shuttered the only immigration detention facility in the State, thus substantially interfering with Plaintiff's immigration goals. *Id.* at *619, *7–8. By contrast, Denver's Challenged Laws do not apply to private parties. Plaintiff can contract with whomever it wants, but not with Denver.

[5] Because accessing a jail's secure area already "requires special permission for admittance by a city officer or employee," Section 28-252 does not prohibit Plaintiff from doing something it previously had a lawful right to do.

23

and create certain records. All these rules "dictate what local workers may and may not do"; they do not control Plaintiff in any way. *Illinois*, 2025 WL 2098688, at *26; *see also United States v. New Jersey*, No. 20-cv-01364-FLW-TJB, 2021 WL 252270, at *13 (D.N.J. Jan. 26, 2021) (same); *McHenry Cnty.*, 44 F.4th at 592 (same).

At most, the Challenged Laws "might affect incidentally the mode of carrying out" federal duties. *Texas*, 123 F.4th at 206. For example, Plaintiff will have to use its own resources, rather than Denver's, to effectuate civil immigration detainers. And it will have to gather information through its own channels rather than rely on Denver to supply it. But "[i]mportantly, [the Challenged Laws] leave open ICE's ability to obtain and present a criminal warrant, thereby receiving the assistance and information it seeks." *United States v. Illinois*, 2025 WL 2098688, at *27 (N.D. Ill. July 25, 2025). In the end, "the purported 'burden' here is [Denver's] decision not to help the Federal government implement its immigration enforcement regime." *United States v. California* (*California I*), 314 F. Supp. 3d 1077, 1111 (E.D. Cal. 2018), *aff'd in relevant part*, *United States v. California* (*California II*), 921 F.3d 865, 880 (9th Cir. 2019). This is not regulation. Count III should be dismissed.

### III. Plaintiff's claims against Denver City Council, Denver Sheriff Department, Mayor Johnston, and Sheriff Diggins duplicative of the claims against Denver and should be dismissed.

Plaintiff's claims against Denver City Council, Denver Sheriff Department, Mayor Johnston, and Sheriff Diggins also fail because these Defendants are not legally distinct from Denver. City Council and the Sheriff Department lack the capacity to be sued. Municipal departments like these cannot be sued unless Denver has "taken explicit steps to grant the servient agency with jural authority." *Brown v. City of Tulsa*, 124 F.4th 1251,

1264 (10th Cir. 2025) (quoting *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th

Cir. 1991)). Nowhere in Denver's Charter has it done this. *Cf. Martinez v. Winner*, 771

F.2d 424, 444 (10th Cir. 1985) (dismissing complaint against Denver Police Department

for not being a "separate suable entity").[6] As for Mayor Johnston and Sheriff Diggins,

because "an official-capacity suit is . . . treated as a suit against the entity," *Kentucky v.

Graham*, 473 U.S. 159, 166 (1985), the Court should dismiss all claims against these

individual Defendants as duplicative of claims against Denver, *see Brown v. City of Tulsa*,

124 F.4th 1251, 1263 (10th Cir. 2025) (noting the district court was correct to do so).

## IV.    Because the legal deficiencies in Plaintiff's FAC cannot be cured by amendment, Plaintiff's claims should be dismissed with prejudice.

"[T]he district court may dismiss without granting leave to amend when it would be

futile to allow the plaintiff an opportunity to amend his complaint." *Brereton*, 434 F.3d at

1219. As shown above, Plaintiff's FAC fails to state a claim against Denver. No

amendment could cure the fundamental and irreparable legal deficiencies in the FAC.

Because the dismissal warranted here "operates on the merits of the complaint, it

[should] be entered with prejudice." *Id.*

## CONCLUSION

For all these reasons, Denver respectfully requests that the Court dismiss

Plaintiff's FAC in its entirety, with prejudice.

---

[6] The Denver Sheriff lacks the constitutional separateness that other county sheriffs enjoy. *See Int'l Bhd. of Police Officers v. City & County of Denver*, 521 P.2d 916, 918 (Colo. 1974).

Dated August 25, 2025.

Respectfully submitted,

*s/ Ashley Kelliher*
Ashley Kelliher, Assistant City Attorney
Robert Lyman, Assistant City Attorney
Sophia Fernald, Assistant City Attorney
Andres Alers, Assistant City Attorney
Denver City Attorney's Office
201 W. Colfax Ave., Dept. 1108
Denver, CO 80202-5332
ashley.kelliher@denvergov.org
robert.lyman@denvergov.org
sophia.fernald@denvergov.org
andres.alers@denvergov.org

*Attorneys for Denver Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of August 2025, I electronically filed the foregoing **CITY AND COUNTY OF DENVER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification to the following:

Amanda B. Saylor
Catherine M. Reno
U.S. Department of Justice
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
amanda.b.saylor@usdoj.gov
catherine.m.reno@usdoj.gov

*Attorneys for Plaintiffs*

David Z. Moskowitz
Talia Boxerman Kraemer
Colorado Department of Law
1300 Broadway,10th Floor
Denver, CO 80203
david.moskowitz@coag.gov
talia.kraemer@coag.gov

*Attorneys for Defendants State of Colorado, Jared Polis and Phillip Weiser*

Edward T. Ramey
Martha M. Tierney
Tierney Lawrence Stiles LLC
225 E. 16th Ave., Ste. 350
Denver, CO 80203
eramey@tierneylawrence.com
mtierney@tierneylawrence.com

*Attorneys for Defendant Colorado General Assembly*

*s/ Michele Imes*
Denver City Attorney's Office

27