IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01391-GPG-KAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

STATE OF COLORADO,
JARED POLIS, Governor of Colorado, in his official capacity,
COLORADO GENERAL ASSEMBLY,
PHILIP WEISER, Attorney General of Colorado, in his official capacity,
CITY AND COUNTY OF DENVER,
DENVER CITY COUNCIL,
MIKE JOHNSTON, Mayor for the City and County of Denver, in his official capacity,
DENVER SHERIFF DEPARTMENT, and
ELIAS DIGGINS, Sheriff of Denver, Colorado, in his official capacity,

    Defendants.

---

**DENVER'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

---

**I.    The Court should dismiss Plaintiff's preemption claim.**

Plaintiff asserts the Challenged laws fail under express, conflict, and field preemption. Plaintiff is mistaken. Each is discussed in turn.

    **A.    The Challenged Laws' information-sharing provisions are not expressly preempted by Sections 1373 and 1644.**

Plaintiff contends 8 U.S.C. §§ 1373 and 1644 expressly preempt the Challenged Laws' provisions on information sharing. Doc. 52 at 26. Not so. First, §§ 1373 and 1644 lack preemptive force. "In order for a federal statutory provision to preempt state law, it 'must be best read as one that regulates private actors.'" *Colorado v. U.S. Dep't of Just.*,

455 F. Supp. 3d 1034, 1058 (D. Colo. 2020) (quoting *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018)). Plaintiff insists "[t]hese provisions of the INA do *not* purport to regulate the states, rather they govern the actions of private individuals, namely aliens." Doc. 52 at 45. But as numerous courts have held, §§ 1373 and 1644 "affect state and local government entities and officials; they do not regulate private actors as [required] for preemption."[1] *Colorado*, 455 F. Supp. 3d at 1059; *see also* Doc. 39 at 19 (citing cases). These statutes cannot preempt the Challenged Laws.

Plaintiff next urges a "broad" reading of §§ 1373 and 1644 based on the statutes' use of the term "regarding." *See* Doc. 52 at 28–33. But this reading "has been treated extensively by other courts" and rejected "[w]ithout exception." *United States v. Illinois*, —– F. Supp. 3d ——, No. 25 CV 1285, 2025 WL 2098688, at *10 (N.D. Ill. July 25, 2025). Regardless, the precise reach of these statutes has no bearing on their preemptive effect because they are unconstitutional under the Tenth Amendment. The federal government may not "compel the States to implement, by legislation or executive action, federal regulatory programs." *Printz v. United States*, 521 U.S. 828, 925 (1997). In direct contravention of this bedrock constitutional principle, §§ 1373 and 1644 purport to issue

---

[1] Rather than address the staggering weight of authority from federal courts—including this Court—that have held §§ 1373 and 1644 do not regulate private actors, Plaintiff chooses to ignore it. Instead, it cites *New York v. United States Dept. of Justice*, 951 F.3d 84, 114 n.27 (2d Cir. 2020) for the proposition that § 1373 regulates private actors. Doc. 52 at 46. The citation is misleading. There, the Second Circuit noted only that it "need not conclusively decide the preemptive effect of § 1373" and the district court's finding that the statute regulates state governments "*may* have been too narrow" because the larger statute—the INA—regulates private persons. *See New York*, 951 F.3d at 114 n.27 (emphasis added). The case, which is not binding on this Court, does not hold § 1373 regulates private actors or can have preemptive force.

orders directly to state and local governments, "requir[ing] the States to govern according to Congress' instructions." *See New York v. United States*, 505 U.S. 144, 162 (1992).

Plaintiff resists this conclusion, but its arguments are unavailing. It insists §§ 1373 and 1644 do not run afoul of the Tenth Amendment because they "plainly only forbid *restricting* assistance—they do not mandate any action." Doc. 52 at 43. This is a distinction without a difference, as courts rejecting this argument have held. *See, e.g.*, *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 869 (N.D. Ill. 2018) (though § 1373 is framed "as a prohibition . . . rather than a directive," "this draftsmanship does not diminish the infringement on state sovereignty" in violation of the Tenth Amendment), *aff'd on other grounds*, 962 F.3d 882 (7th Cir. 2020); *see also Murphy*, 584 U.S. at 481 (applying the anti-commandeering doctrine to invalidate a federal statute that prohibited states from enacting a certain type of law). It is unsurprising, then, that an overwhelming number of federal courts have held §§ 1373 and 1644 violate the Tenth Amendment. *See* Doc. 39 at 21 (citing cases). Plaintiff cannot reckon with this caselaw.[2] Sections 1373 and 1644 are unconstitutional and cannot preempt the Challenged Laws.[3]

---

[2] Instead, Plaintiff invokes *New York* for the proposition that a commandeering challenge "depends on there being pertinent authority 'reserved to the States'" and faults Denver for not "explain[ing] how the power they seek—prohibiting information sharing—is reserved to the States." Doc. 39 at 42, 47 (quoting *New York*, 951 F.3d at 113). Again, *New York* does not carry the day. The Second Circuit only held that a court considering the statute's constitutionality would have to consider whether there existed "some power reserved for the States to prohibit information sharing with federal authorities." *Id.* at 114. Even applying this non-binding authority's analytical framework, such power exists here, as Denver explained. *See* Doc. 39 at 22.

[3] Plaintiff's express preemption theory fails for yet another reason. The Challenged Laws do not apply to the dissemination of information to the extent required by §§ 1373 and

### B.  The Challenged Laws are not conflict preempted.

Plaintiff's conflict preemption arguments fare no better. Plaintiff maintains the FAC "states a clear claim of implied conflict preemption" because the Challenged Laws "stand as obstacles" to federal immigration enforcement.[4] *See* Doc. 52 at 37. They do not.

Plaintiff misconstrues a basic premise: "there is an important difference between actively interfering and simply refraining from assisting with federal immigration enforcement." *Colorado*, 455 F. Supp. 3d at 1059. "Federal law provides states and localities the *option*, not the *requirement*, of assisting federal immigration authorities." *United States v. California*, 921 F.3d 865, 889 (9th Cir. 2019). This voluntary option extends to local decisions in every area complained of in Plaintiff's Response: cooperating with immigration detainers and administrative warrants; sharing information; contracting to enforce civil immigration law; and providing access to local jails.[5] *See* Doc.

---

1644. *See* Doc. 39 at 22–23. In response, Plaintiff insists §§ 1373 and 1644 "do not *require* local governments" to take action." Doc. 52 at 33. This argument fails in light of the principle that where possible, statutes should "be construed in such a way as to avoid doubtful constitutional questions." *See Arizona v. United States*, 567 U.S. 387, 415 (2012). It is clear the Challenged Laws are intended to be consistent with §§ 1373 and 1644, and this Court should therefore interpret them accordingly.

[4] Plaintiff does not address Denver's arguments that compliance with both federal and local law is possible and, thus, concedes this issue. *See* Doc. 39 at 11; *Gays Against Groomers v. Garcia*, 758 F. Supp. 3d 1298, 1312 n.6 (D. Colo. 2024) (concluding plaintiffs waived arguments not raised in response to a motion to dismiss).

[5] Plaintiff also takes issue with D.R.M.C. § 28-253(d), which pertains to non-mandatory "notification requests" issued by federal immigration enforcement authorities seeking notification when an individual is released from custody. Doc. 52 at 40. This provision instructs the sheriff department to advise an inmate of a notification request and that the individual "enjoys certain legal rights if contacted by federal immigration enforcement authorities." *See* D.R.M.C. § 28-253(d). Contrary to Plaintiff's view, this provision does

52 at 37–40; *see also* Doc. 39 at 12–15 (citing authority holding that such assistance is voluntary). Plaintiff admits as much. *See* Doc. 52 at 40.

Nevertheless, Plaintiff insists state and local decisions not to assist the federal government with these activities "actively obstruct" it because "Congress anticipated coordination between federal, state, and local officials" under the INA. Doc. 52 at 41. But even if "Congress may have hoped or expected that States would cooperate" with federal civil immigration activities, state and local governments "are not bound by that hope or expectation." *McHenry Cnty. v. Raoul*, 44 F.4th 581, 591 (7th Cir. 2022). A city's voluntary decision not to assist the federal government's civil immigration enforcement activities does not amount to obstruction, even if local assistance would make it "easier for immigration agents to discharge their obligations under the INA." *Illinois*, 2025 WL 2098688, at *21. As one court recently explained in rejecting a nearly identical challenge to similar state and local laws, "[d]eclining an option offered by a federal statute cannot create a conflict for preemption purposes." *Id.*; *see also McHenry Cnty.*, 44 F.4th at 591 ("It would make no sense to hold that a federal statute premised on State cooperation preempts a State law withholding that cooperation."). Obstacle preemption, therefore,

---

not obstruct federal civil immigration enforcement investigations. Doc. 52 at 39–40. "There is nothing in the federal regulatory scheme requiring States to alert federal agents before releasing a state or local inmate." *California*, 921 F.3d at 887. And Plaintiff fails to explain how simply informing individuals of their legal rights in connection with a notification request "do[es] 'major damage' to clear and substantial federal interests," which is necessary for obstacle preemption to apply. *McHenry Cnty.*, 44 F.4th at 591 (citation omitted). Just the opposite. As this Circuit recognizes, "informing an individual of his constitutional rights . . . is important because it shows the individual that [law enforcement] are prepared to respect his assertion of those rights." *United States v. Fernandez*, 18 F.3d 874, 882 (10th Cir. 1994).

does not apply.[6]

### C. The Challenged Laws are not field preempted.

Seeking to salvage its nonviable preemption claim, Plaintiff asserts—for the first time—that the Challenged Laws are field preempted.[7] *See* Doc. 52 at 35. This late-blooming argument fails.

"Field preemption occurs when federal law occupies a 'field' of regulation 'so comprehensively that it has left no room for supplementary state legislation.'" *Murphy*, 584 U.S. at 479 (citation omitted). As explained above, the INA gives state and local governments the choice to assist in civil immigration enforcement activities. "A provision that allows for policy decisions by States and localities as to the extent of their participation is about 180 degrees away from a command, let alone one that leaves 'no room for supplementary state legislation.'" *McHenry Cnty.*, 44 F.4th at 589 (citation omitted).

Denver does not dispute that when it comes to immigration policy, Congress has indeed "occupied the field." *Arizona v. United States*, 567 U.S. 387, 401 (2012). But Denver is not a player on that field at all, and thus Denver's actions simply cannot be

---

[6] Any contrary conclusion would violate the Tenth Amendment. *See* Doc. 39 at 16–17. "Extending conflict or obstacle preemption to [the Challenged Laws] would, in effect, 'dictate what a state legislature may and may not do,'" effectively "transform[ing] a statutory provision giving States 'the right of refusal' into a provision requiring state action." *Illinois*, 2025 WL 2098688, at *23 (internal quotation marks omitted) (quoting *California*, 921 F.3d at 888). Plaintiff does not address this case or several others that reached the same conclusion. *See* Doc. 39 at 16–17 (citing cases).

[7] Plaintiff does not plead field preemption in its FAC. *See* Doc. 31 at 3, 26 (identifying only conflict and express preemption as the basis for its preemption claim).

preempted. Denver has no "immigration policy." Denver does not issue visas or work permits or deportation orders. The Challenged Laws simply direct Denver's employees—who are paid by the city to engage in city business—to focus city time and resources on city priorities and leave immigration decisions and enforcement entirely to Plaintiff. Denver is exercising its right to choose the extent of its participation in the federal government's civil immigration enforcement activities, not creating its own immigration scheme.[8] Field preemption is inapplicable. The Court should dismiss Count I.

## II. The Court should dismiss Plaintiff's unlawful discrimination claim.

Plaintiff's discrimination argument overlooks what discrimination is—treating two similarly situated parties unequally based on a protected characteristic (here, Plaintiff's federal status). *United States v. Washington*, 596 U.S. 832, 839 (2022). Plaintiff's claim lacks a comparator, which Plaintiff admits it cannot identify. Doc. 52 at 43; *see Washington v. United States*, 460 U.S. 536, 544–45 (1983); *McHenry County v. Raoul*, 44 F.4th 581, 594 (7th Cir. 2022) ("Differential treatment is critical to a discrimination-based intergovernmental immunity claim."). "Absent a comparator," Doc. 52 at 43, the Challenged Laws cannot be discriminatory.

Plaintiff claims it is discriminatory for Denver to "singl[e] out" federal immigration authorities by name in some of the Challenged Laws. Doc. 52 at 41–42. Wrong again. No one—federal or non-federal—can marshal Denver's resources to enforce federal civil

---

[8] Indeed, several courts have upheld similar exercises of state and local discretion whether to assist in federal civil immigration enforcement efforts. *See, e.g.*, Doc. 39 at 15 (citing cases).

immigration law. And the federal government "remains free to participate in intergovernmental cooperation" with Denver for any other services "not related to immigration." *McHenry County*, 44 F.4th at 594 n.7. Because Denver's cooperation is voluntary, *see supra* Section I.B, Denver can exercise its prerogative to regulate its personnel, even if that regulation "touches on an exclusively federal sphere," *McHenry County*, 44 F.4th at 594. No law-enforcement agency could expect Denver to hold someone on a mere "detainer request" or an "administrative warrant" signed by a police chief or supervising special agent. Nor would they be permitted to remove someone from a Denver jail without a court-issued writ. When judicial process is presented—as when a person is accused of committing an immigration-related crime—immigration authorities receive the same treatment as local sheriffs or the FBI. The fundamental distinction is not between immigration and non-immigration cases. It is between criminal and civil law enforcement. At bottom, Plaintiff doesn't want equal treatment; it wants *special* treatment.[9] This special treatment would violate both the Constitution[10] and federal regulations issued pursuant to the INA.[11] Plaintiff demands that Denver contravene the

---

[9] Plaintiff has not pled that other civil law enforcement agencies, such as the Securities and Exchange Commission or the Colorado Department of Health and Environment, enjoy access to Denver jails similar to what Plaintiff demands for ICE.

[10] Holding aliens in custody based on immigration detainers violates the Fourth Amendment. *See, e.g., Miranda-Olivares v. Clackamas Cnty.*, No. 3:12–cv–02317–ST, 2014 WL 1414305 (D. Or. 2014) (finding detainers voluntary in part based on the anti-commandeering doctrine, allowing *Monell* liability for sheriff).

[11] The implementing regulations for the INA itself permit *only* immigration officers to act on administrative warrants. *See* 8 C.F.R § 236.1(b)(1); 8 C.F.R. § 287.5(e).

very law Plaintiff has based this suit upon. This is not the stuff with which intergovernmental immunity is concerned. Count II should be dismissed.

### III. The Court should dismiss Plaintiff's unlawful regulation claim.

Denver has taken no tools out of Plaintiff's immigration-enforcement toolkit. Rather, by enacting the Public Safety Enforcement Priorities Act, Denver has chosen not to participate in enforcing detainers and administrative warrants. *Galarza v. Szalczyk*, 745 F.3d 634, 645 (3d Cir. 2014); *United States v. California* (*California II*), 921 F.3d 865, 887 (9th Cir. 2019). Were it Congress' goal to impress local governments into federal service by mandating assistance, those laws would violate the Tenth Amendment. *Colorado*, 455 F. Supp. 3d at 1045; *Oregon v. Trump,* 406 F. Supp. 3d 940, 971 (D. Or. 2019); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 329–30 (E.D. Pa. 2018).

Plaintiff does not contest the Challenged Laws regulate only Denver's own personnel and agencies. *See* Doc. 52 at 49. Still, Plaintiff submits this isn't dispositive and cites three cases in support: *Geo Group*, *CoreCivic*, and *King County*. Each case invalidated regulations of private parties (in *Geo Group* and *CoreCivic*, immigration-detention contractors; and in *King County*, fixed-base operators that contracted with ICE). Denver's Challenged Laws, on the other hand, do not regulate private parties. Doc. 39 at 23 n.4. As courts have recognized, the distinction matters. *County of Ocean,* 475 F. Supp. 3d at 372; *Colorado*, 455 F. Supp. 3d at 1059; *Illinois*, 2025 WL 2098688, at *14; *Oregon*, 406 F. Supp. 3d at 972; *City of Philadelphia*, 309 F. Supp. 3d at 329. Denver's Challenged Laws regulate its own personnel while they are on the clock, which Denver has the right to do.

*King County* does not compel a different result. The Ninth Circuit has clarified *King County* does not apply to state regulations that do not (1) "require ICE to entirely transform its approach to detention in the state or else abandon its [state] facilities," (2) give a state "virtual power of review over ICE's detention decisions," or (3) "prevent ICE's contractor's from continuing to run detention facilities." *GEO Grp. v. Inslee*, 151 F.4th 1107, 1118 (9th Cir. 2025) (cleaned up). Laws like Denver's are distinguishable. ICE can continue operating in any public spaces in Denver, unimpeded, and contract with any private parties.[12] What ICE cannot do is coerce Denver personnel to help enforce federal civil immigration law. Plaintiff has lost this argument before. *Illinois*, 2025 WL 2098688, at *27 (distinguishing *King County* because Illinois', Cook County's, and Chicago's "sanctuary" policies did not "comparably regulate ICE operations"). It should lose it again. Because the Challenged Laws do not regulate the government, Count III should be dismissed.

IV.    **The Court should dismiss the improperly named defendants.**

Plaintiff misreads *Ex parte Young*, which carves out an exception to *state* sovereign immunity for official-capacity suits. Local governments like Denver do not enjoy sovereign immunity. *See Bd. of Trs. v. Garrett*, 531 U.S. 356, 369 (2001). *Ex parte Young*, therefore, is irrelevant. Further, Plaintiff never alleged Denver, and its constituent departments and officials acted "in concert," *see* Doc. 52 at 52, or mentioned Mayor Johnston's

---

[12] Plaintiff's argument that Denver has raised the standard to detain undocumented immigrants, Doc. 52 at 47–48, is a red herring. Denver hasn't "prevent[ed]" Plaintiff from doing anything; ICE can continue to send detainers and administrative warrants to Denver law enforcement, but Denver has no legal or constitutional duty—*or ability*—to honor them.

10

congressional testimony, *see id.* at 51. Nor did Plaintiff address *Martinez*, which substantiates the Denver Sheriff Department is improperly named. As for the Denver City Council, Plaintiff's argument—the City Council passed the Public Safety Enforcement Priorities Act, so it is a proper defendant—is meritless. Doc. 52 at 53.

All these Defendants are legally one and the same. Plaintiff cannot overcome that "it is proper to dismiss allegations against municipal officers in their official capacities when the allegations duplicate claims against the governmental entity itself." *Thompson v. Connick*, 578 F.3d 293, 297 n.4 (5th Cir. 2009), *rev'd on other grounds*, 563 U.S. 51 (2011). The Court should dismiss the claims against these defendants.

Dated October 23, 2025.

Respectfully submitted by,

*s/ Ashley Kelliher*
Ashley Kelliher, Assistant City Attorney
Robert Lyman, Assistant City Attorney
Sophia Fernald, Assistant City Attorney
Andres Alers, Assistant City Attorney
Denver City Attorney's Office
201 W. Colfax Ave., Dept. 1108
Denver, CO 80202-5332
Telephone: (720) 913-3100
Facsimile: (720) 913-3155
Email: ashley.kelliher@denvergov.org
robert.lyman@denvergov.org
sophia.fernald@denvergov.org
andres.alers@denvergov.org
*Attorneys for Denver Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on this October 23, 2025, I electronically filed the foregoing **CITY AND COUNTY OF DENVER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will serve all counsel of record.

                                      *s/ Michele Imes*
                                      Denver City Attorney's Office